# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 6, 2005

## STATE OF TENNESSEE v. DESHAWN TURNER

### Appeal from the Circuit Court for Hardin County
### No. 8367   C. Creed McGinley, Judge

---

### No. W2005-01054-CCA-R3-CD  - Filed December 21, 2005

---

The Defendant, Deshawn Turner, was convicted of one count of possession of .5 grams or more of cocaine a schedule II controlled substance, with the intent to manufacture, deliver or sell, and the trial court sentenced him to sixteen years in prison.  On appeal, the Defendant contends that the trial court erred when it refused to grant his motion to sever his trial from the trial of his co-defendant and that the evidence is insufficient to sustain his conviction.  Finding that there exists no reversible error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the Appellant, Deshawn Turner.

Paul G. Summers, Attorney General and Reporter; Jane L. Beebe, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; John W. Overton, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

This case arises from a stop and subsequent search of a vehicle in which the Defendant was riding on March 14, 2004, and in which the police found cocaine.  The Defendant was charged with one count of possession of a schedule II drug with the intent to manufacture, sell, or deliver the drugs.  Prior to trial, the Defendant filed a motion to sever his trial from the trial of his co-defendant, Kristy D. Lewis, who was driving the car when it was stopped by the police.  In his motion, he asserted that he was entitled to have his case heard individually and he expected that the defense of both defendants could be mutually exclusive.  Further, he said that a joint trial would result in

1

insurmountable and unfair prejudice. The trial court denied this motion. Subsequently, the Defendant renewed his motion to sever and asserted that he had learned of his co-defendant's statements exonerating the Defendant and wished to call her to testify, which he could not do in a joint trial. The co-defendant's trial counsel informed the trial court that his client intended to testify, and she would not invoke her Fifth Amendment rights. The trial court denied the Defendant's motion with the understanding that the motion could be revisited if the co-defendant did not testify.

At the Defendant's trial, the following evidence was presented: Keith Amos, a deputy sheriff, testified that on March 19, 2004, he was working drug interdiction when he noticed a tan 1999 Chevrolet Cavalier that did not have a properly operating break light. He, therefore, activated his blue lights to stop the vehicle. Officer Amos testified that, as the vehicle started to exit to the right on the median, he noticed the passenger's door open, and, once the car was completely stopped, the passenger closed the door. He said that the door was open for approximately ten to twenty seconds. The officer said that another officer, Officer Charles White, came to assist him with this traffic stop. Officer Amos testified that he then approached the driver's side door, and he noticed two people in the car, a female driver, Lewis, and a male passenger, the Defendant. The officer informed Lewis why he stopped her car. She said that she knew that she had a brake light out, and the officer said that she seemed very nervous, which aroused his suspicions. The officer said that he asked Lewis to step out of the car and to come back and talk to him. The Defendant remained in the car at this time.

Officer Amos testified that he was concerned that there was possibly a domestic situation or dispute that was making Lewis nervous. When she came back to talk to him, he told her that she appeared nervous and asked her if there was something that she needed to tell him. Lewis said "no," and the officer asked her if she had anything illegal in her car. Lewis again said "no," and consented to a search of her car. Officer Amos testified that he patted down Lewis and found $250 in cash and then he placed her in the back of his patrol car. The officer went to the Defendant and told him that Lewis gave him permission to search the car. He patted the Defendant down for officer safety and found $5,349 in his right front pocket. The officer placed the Defendant in the back of Officer White's patrol car.

Officer Amos testified that he and Officer White began searching the car, and Officer White found a substance that appeared to be cocaine, in both powder and rock form, in a clear bag lying between the driver's side door and the driver's seat. The officer described it as "quite a large amount" of cocaine. The officer estimated the street value of the powder cocaine to be approximately $1,700, and the street value of the rock cocaine to be $1,200. Officer Amos returned to his patrol car and asked Lewis if she knew that there was cocaine in her car, and she denied that she did. The officer arrested Lewis and the Defendant. After arresting the Defendant, the officer obtained and executed a search warrant for the Defendant's house. In the Defendant's house, Officer Amos found $3,795 underneath the Defendant's mattress.

On cross-examination by Lewis' counsel, the officer said that dispatch had told him that they got an anonymous call saying that a black man riding in a tan car with a white female was carrying

2

a large quantity of drugs. The officer noted that Lewis' vehicle fit this description before he noticed that her brake light was not properly working. Officer Amos said that Lewis said that she did not have anything illegal in her car, and she consented to the car being searched. He said that, after he found the drugs, he asked both Lewis and the Defendant if they knew that there were drugs in the car, and they both denied knowing about the drugs. The officer said that Lewis later gave a statement to police in which she stated that the drugs belonged to the Defendant. She also told police that, after the officer stopped her car, the Defendant threw the drugs at her and told her to put them with her other property. She said that she told the Defendant "no" and let the drugs fall between the driver's door and the driver's seat. The officer said that the police never searched Lewis' home.

On cross-examination by the Defendant's counsel, Officer Amos said that the drugs were found in Lewis' car on the driver's side of the car. The officer reiterated that he did not find drugs on the Defendant's person or during the subsequent search of the Defendant's home. He said that there were no fingerprints on the bag that contained the drugs, and he said that it was possible that the money found on the Defendant could have been obtained legally.

Officer White testified that he assisted Officer Amos in this traffic stop on March 14, 2004. He said that he also noticed the passenger's side door open and shut prior to the vehicle coming to a complete stop. He said that he saw that there were two people in the car, a white female who was driving and a black male who was in the passenger's seat. Officer White said that, after the car stopped, Officer Amos told Lewis why he had stopped her, and he asked her to come and talk to him. After they talked, Lewis gave the officers consent to search her vehicle. He said that he got the Defendant out of the car, patted him down, and found a large amount of money. The officer said that he found the drugs during the search of the vehicle.

On cross-examination by Lewis' counsel, the officer said that he became suspicious of the passenger of the car when the passenger's side door to the car opened while it was being stopped. On cross-examination by the Defendant's counsel, the officer said that if something had been tossed out of the passenger's side door while it was open he would have seen it being thrown. He reiterated that the Defendant did not have any drugs on him when he was searched, and there were no drugs in the glove box or on the passenger's side floorboard.

Erica Katherine, an agent with the Tennessee Bureau of Investigation ("TBI"), testified that she tested the substance found by the officers in this case. She said that she determined that it was 12.9 grams of cocaine base, or crack cocaine, and 17.5 grams of powder cocaine. The agent said that the average or standard amount of crack cocaine that she normally sees in the crime laboratory is between .5 grams and 1.5 grams. She said that the average amount of powder cocaine is between 1.0 and 2.0 grams.

Kristy Lewis testified that, on March 14, 2004, she was working in Selmer when the Defendant called her and said that he needed a ride. She said that she did not know the Defendant that well, but he was her husband's friend so she agreed to give him a ride. She said that she thought that she was going to take the Defendant and drop him off with a friend, but then she learned that

she was going to have to bring him back too. Lewis said that she picked the Defendant up at his friend's house at around 3:30 p.m., and she was driving a 1999 Chevrolet Cavalier. She said that when the Defendant got into the car, he did not have anything with him. Lewis testified that the Defendant talked to the friend that he was supposed to meet on the phone, and he told her that they were going to meet at a store. When they arrived, the Defendant's friend was not there. Lewis said she went through a nearby drive-through to get something to eat and went back to the store. She said that the Defendant got out of the car, and she stayed in the car because she was trying to call her husband on her cell phone. Lewis said that the Defendant got back in the car and said, "All right, I'm ready." Lewis never saw the Defendant talk to anyone because her car was pointed in the other direction.

Lewis said that the officers' testimony about the traffic stop was accurate. She said that when the officer initiated the traffic stop the Defendant opened his door, and she said, "What are you doing: We haven't done anything." Lewis testified that the Defendant shut his door, and, as Officer Amos was coming toward the car, the Defendant tossed a bag at her and said, "Put this in your s***." She said that she told the Defendant "no," and she panicked. She said that she was terrified, and when the officer asked her if he could search her car she asked him "what if the passenger had something." Lewis said that she had never even had a speeding ticket, and she was terrified. Lewis said that, after she was arrested and while she was still in jail, the Defendant's acquaintances called her and offered her money to "take the charge."

Lewis said that, the day she got out of jail, she took a drug test to prove that she had not used any drugs. She said that the test came back clean except for prescription medication. Lewis admitted that she had problems with drugs in the past, but she never sold drugs. Lewis said that the Defendant's friends were calling her all the time and telling her to "take the charge." She said that she told them that she would say that the drugs were hers, but she said that she only told them that to stop them from calling her. She said that the Defendant and his wife insisted that she prepare something in writing that said that she was going to plead guilty and exonerate the Defendant. She said that they were calling her every day so she gave such a statement and had her mother notarize the statement. She also made a video recording the Monday before trial and, in the recording, she read the statement. Lewis denied that the statements that she made in the videotape were true, and she reiterated that the drugs were not hers. She said that she had no misdemeanor or felony convictions on her record.

On cross-examination by the State, Lewis said that she did not immediately tell the officer that the Defendant threw drugs at her because she was scared. Lewis said that she gave two statements to the police that were accurate, and in those statements she told them that she did not know that the Defendant had drugs until he threw them at her. She said that she made an additional statement and gave it to the Defendant. She said that she did not think that the statement could be used in court, and she only made it a few days before trial to pacify the Defendant. Lewis said that the Defendant asked her to make this statement, and she was also asked by the Defendant's friends, who she described as being "not so nice about it." The statement was read into evidence as follows:

4

I, Kristy Lewis, being of sound mind and body, not under the influence of drugs or threats, do hereby make oath as to the drugs being found in my vehicle on March 19th, 2004, said drugs belonging to me, and I do hereby take full responsibility for said drugs. Said Co-defendant, Deshawn Turner, was not aware of the presence of the drugs and should be released of any responsibility.

This statement was signed December 3, 2004. Lewis said that she put in the affidavit what the Defendant told her to, and the statement was not true. Lewis said that the Defendant told her it would be better if she made a videotape in which she read the statement, so she did that two days before trial at the Defendant's friend's house. Lewis said that she was called by multiple people that she knew dealt drugs and told to take the charge. She said that she received phone calls in jail telling her that she "was dead." Lewis said that she did not tell the police about the threats, but she did keep her phone bills and voice mails.

On cross-examination by the Defendant's attorney, Lewis said that she knew the Defendant for approximately one year, and she denied having an affair with him. She said that she and her husband have been separated in the last year, but it had nothing to do with the Defendant. Lewis said that she wrote and signed the affidavit. She said that she is in the real estate business, and she had some experience with legal documents. Lewis testified that she sat in front of a video camera and read this statement. She said that she was "hounded" since the day that she was arrested and so she lied on the videotape. Lewis said that she has been in a rehabilitation program for over one week, and she was not using drugs. She admitted that the drugs were found on her side of the car.

The Defendant's wife, Wendy Turner, testified that, in March of 2004, she gave the police consent to search her house. She said that they found no drugs but found some money under the mattress. Turner testified that the money was partly her income tax refund and money that she saved from working as a waitress. She said that she did not put the money in the bank because she did not claim all of her tips. Turner testified that, in March of 2004, she and her husband owned four cars, two of which they sold for a little over $5,000. She said that she was present at both sales, and both cars were sold for cash. Turner said that her husband was carrying the cash with him because they were going to buy another car on March 14, 2004, but her grandmother died that morning.

Turner said that the first time that she saw Lewis' affidavit was when Lewis brought it to her at her house. She said that Lewis also delivered a videotape to her the Monday before trial. Turner said that, when she brought over the video tape, she heard Lewis tell the Defendant that she wanted to confess and that this was the only way that she knew to confess. She said that she has never seen her husband threaten Lewis.

On cross-examination by the State, Turner said Lewis' husband called her at around 5:00 p.m. and told her that the Defendant and Lewis had been arrested. She said that the police then arrived at around 8:30 p.m. to search her house. She said that an officer asked her if there was a gun under the mattress, and she told him that there used to be, but they no longer owned a gun. The officer looked under the mattress and found the money. Turner identified two pieces of paper that

5

were handwritten notes from the people who purchased cars from the Turners on February 24, 2004, and March 16, 2004, but she said that she did not have titles.

On cross-examination by Lewis' counsel, Turner said that, the morning after her grandmother died, the Defendant was at work at Clayton. She said the Defendant never told her if he called Lewis for a ride that day. She agreed that she is not aware of a lot that her husband says and does.

On redirect examination, Turner testified that her 2003 tax return showed that she received a refund of $3,026.05, and she said that she cashed this check and brought the money home.

Based upon this evidence, the jury found both Lewis and the Defendant guilty of possession of a schedule II controlled substance with the intent to manufacture, sell, or deliver.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to sever his trial from the trial of his co-defendant and that the evidence is insufficient to sustain his convictions.

### A. Motion to Sever

The Defendant contends that the trial court erred when it refused to grant his motion to sever. He asserts that the record supports a finding that he was "clearly prejudiced" because there were two defendants involved in this case, and they both claimed that they were innocent and blamed the other. He asserts that co-defendant Lewis testified that the Defendant's friends and partners coerced her into admitting that the cocaine was hers, and this evidence would not have been admissible at the Defendant's trial if he were tried alone. The State counters that the Defendant filed his motion to sever because he sought to compel co-defendant Lewis to testify. Prior to trial, when the Defendant learned that co-defendant Lewis was, in fact, going to testify, he abandoned his motion. Therefore, the State asserts, he cannot successfully complain that the trial court's failure to sever the trials clearly prejudiced him.

A trial court shall grant a pretrial motion to sever if it is "deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(i). Decisions concerning consolidation and severance of offenses pursuant to Rules of Criminal Procedure 8(b), 13, and 14(b)(1) will be reviewed for an abuse of discretion. State v. Denton, 149 S.W.3d 1, 12 (Tenn. 2004); State v. Toliver, 117 S.W.3d 216, 231 (Tenn. 2003). An abuse of discretion in this context implies that the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which caused an injustice to the complaining party. Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000); State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). This Court has held that "where a motion for severance has been denied, the test to be applied by this [C]ourt in determining whether the trial court abused its discretion is whether the defendant was 'clearly prejudiced' in his defense as a result of being tried with his c[o-]defendant." State v. Price, 46 S.W.3d 785, 803 (Tenn. Crim. App. 2000) (quoting State v. Burton, 751 S.W.2d 440, 447 (Tenn.

Crim. App. 1988).

In Bruton v. United States, 391 U.S.123 (1968), the United States Supreme court held that where two defendant's are jointly tried, admission of one defendant's pre-trial statement implicating the co-defendant violates the co-defendant's sixth amendment right to confront and cross-examine witnesses against him. Id. at 136-37. In the case under submission the confessing co-defendant testified, and the Defendant had the right to cross-examine her. Therefore, no confrontation problem exists, and Bruton has no application to this case. See McCracken v. State, 548 S.W.2d 340, 343 (Tenn. Crim. App. 1976); State v. James D. Roper, No. 01C01-9311-CR-00414, 1994 WL 548705, at *2 (Tenn. Crim. App., at Nashville, Oct. 6, 1994), *perm. app. denied* (Tenn. Feb. 6, 1995).

Further, we agree with the State that the Defendant cannot now successfully complain that the trial court improperly denied the motion to sever when he did not pursue this motion prior to trial. Co-defendant Lewis denied to the police that the drugs were hers, but, three days before trial, she wrote an affidavit and made a videotaped statement, which she gave to the Defendant's wife, stating that the drugs were hers and not the Defendant's. Based upon this affidavit and videotaped statement, the Defendant sought a motion to sever his trial from co-defendant Lewis' trial. In that motion the Defendant stated that he sought a severance because he "recently . . . learned of co-defendant's unequivocal statement that [he] is not guilty of the crimes charged in this indictment and that [co-defendant Lewis] was acting alone in possessing the illegal drugs . . . ." Further, he said that he expected co-defendant Lewis to exercise her Fifth Amendment right not to testify, which would deprive him of his right to cross-examine her. Prior to trial, the trial court addressed this motion, and co-defendant Lewis' attorney told the court that he anticipated that co-defendant Lewis would testify. The trial court said, "If she does, that's going to take care of our problems. If she doesn't, I need to sever." At that point, the Defendant did not object, seemingly because he agreed that, if co-defendant Lewis testified, he would have the right to cross-examine her, which is what he sought. Under these circumstances, we conclude that the trial court did not abuse its discretion when it denied the Defendant's motion to sever because the Defendant has not proven that he was "clearly prejudiced" by the trial court ruling. He is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

Next, the Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for possession of .5 grams or more of cocaine with the intent to manufacture, deliver or sell. Specifically, he asserts that his conviction cannot be rightfully based solely on the uncorroborated testimony of an accomplice. The State counters that the Defendant was convicted based upon evidence in addition to the testimony of an accomplice. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn.

Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In order to convict the Defendant of possession with intent to sell or deliver a controlled substance, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed "a controlled substance with intent to manufacture, deliver, or sell such controlled substance." Tenn. Code Ann. 39-17-417(a)(4) (2003). Possession may be actual or constructive. A person who knowingly has direct physical control over an object at a given time is then in actual possession of it. See 7 Tenn. Practice, Tenn. Pattern Jury Inst.-Criminal 31.04 (2002). Tennessee Code Annotated section 39-17-417(a), prohibiting the possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" Id. at 846 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted)).

According to Tennessee Code Annotated Section 39-17-419 (2003), "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Thus, the jury can infer an intent to sell or dispense drugs based upon the amount of drugs possessed by the defendant and the absence of drug paraphernalia. See State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (sustaining a conviction for possession with intent to sell after the defendant had been discovered with 1.7 grams of crack cocaine on his person); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony about the amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *3 (Tenn. Crim. App., at Nashville, Oct. 8, 2004), *perm. app. denied* (Tenn. May 23, 2005) (determining that the absence of drug paraphernalia, and testimony of value and amount of 3.3 grams of cocaine provided sufficient evidence for jury to draw an inference of defendant's intent to sell and deliver a controlled substance); State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *4 (Tenn. Crim. App., at Nashville, May 10, 2004)*, no Tenn R. App. P. 11 application filed* (holding that the testimony about the large volume and street value of 25.5 grams of cocaine, the typical dosages for addicts, and the absence of drug paraphernalia was

sufficient to support an inference and conviction of intent to deliver).

Initially, we note that the Defendant seemingly does not argue that the evidence was insufficient to prove the elements of possession with intent to manufacture, sell, or deliver, but he argues that he was convicted based upon the uncorroborated testimony of an accomplice. As our Supreme Court has stated, "In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). Furthermore, accomplices cannot corroborate each other. State v. Green, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). The general test is whether the accomplice would be indicted for the offense charged against the defendant. Id. (citations omitted).

Our Supreme Court has set forth the quantum of proof necessary to establish sufficient corroboration as follows:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

Shaw, 37 S.W.3d at 903 (quoting Bigbee, 885 S.W.2d at 803). In other words, the corroboration must include some fact establishing the identity of the defendant as a criminal actor. It is generally for the jury to determine whether sufficient corroboration exists. Shaw, 37 S.W.3d at 903. However, as this Court has previously pointed out, "Evidence which merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony." State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997).

In the case under submission, we conclude that there was sufficient corroboration of the co-defendant Lewis' testimony. The arresting officer received information that a black male riding in a tan car with a white woman was carrying a large amount of drugs. He saw a vehicle matching this description and noticed that it was missing a brake light. The officer, therefore, initiated a stop and saw the passenger's side door open for approximately twenty seconds before the vehicle came to a stop. The officer stopped and approached the car, and he saw that the Defendant was riding in the passenger's seat of the car, which co-defendant Lewis was driving. The officer noticed that co-defendant Lewis seemed nervous, and, fearing a domestic dispute, he asked Lewis to converse with

him while the Defendant remained in the car. Lewis consented to a search of her car. When the officers removed the Defendant from the car to conduct the search, they patted him down and found $5,349 on his person. They found 12.9 grams of cocaine base, the street value of which is $1,200 and 17.5 grams of powder cocaine, the street value of which is $1,700. The officers arrested both the Defendant and co-defendant Lewis. A search of the Defendant's home produced $3,795, which was found underneath a mattress in his bedroom. Co-defendant Lewis testified that the drugs were the Defendant's and not hers. The jury did not accredit this testimony and found co-defendant Lewis guilty of possession of .5 grams or more of a controlled substance with the intent to manufacture, sell, or deliver it. Similarly, they found the Defendant guilty of possession of .5 grams or more of a controlled substance with the intent to manufacture, sell, or deliver it. Co-defendant Lewis' testimony was sufficiently corroborated by the other evidence presented by the State, and we conclude that the evidence is sufficient to sustain the Defendant's conviction. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE