**STATE of Tennessee, Appellee,**

v.

**Gary GREEN, Appellant.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Aug. 23, 1995.

Martha Yoakum, Charles Herman, Jacksboro, for Appellant.

Charles W. Burson, Attorney General & Reporter, Hunt S. Brown, Assistant Attorney General, Nashville, Shane Sexton, Asst. District Atty. General, Tazewell, for Appellee.

## OPINION

JOHN A. TURNBULL, Special Judge.

Defendant, Gary Green, was convicted of the aggravated burglary of the home of Don Ray, the General Sessions Judge of Claiborne County, by jury verdict on April 16, 1993. He was also convicted of theft of a value of over $10,000.00. Defendant appeals, challenging the sufficiency of the evidence on the grounds that he was convicted based solely on the uncorroborated testimony of accomplices.

## FACTUAL BACKGROUND

The burglary of Judge Ray's home took place on February 20, 1992 sometime in the afternoon. Over $19,000.00 worth of guns, jewelry and personal items were stolen. T.B.I. Agent Scott, after preliminary investigation at the home, questioned a "known burglar" in the community, Wallace Saylors, Jr. (Saylors, Jr.). Information provided by Saylors, Jr. led Agent Scott to near the old "Doc Howard" mansion, five miles distant, where two long guns stolen in the burglary were found. Saylors, Jr. implicated the defendant as mastermind of the burglary, his

father Wallace Saylors, Sr. as a participant, and Bill Monday as their next-door-neighbor lookout. During Defendant's trial, the three other participants in the burglary, Saylors, Jr., Saylors, Sr., and Monday all testified. Each implicated Defendant as the mastermind, planner and instigator of the Ray burglary. Each acknowledged his own role in the crime. Saylors, Sr. stated that Defendant first approached him in a pool room in January, 1992 with the proposition that they pull the job. Defendant offered him money to participate in the burglary of Judge Ray's home, and asked Saylors, Sr. if he might acquire the assistance of his son, Saylors, Jr. After another conversation a few days later, Saylors, Sr. claims he told Defendant, "he would pass," and did not want to participate in the burglary. Saylors, Sr., ever the good father, did tell Defendant his son would be in Tennessee around February 18th. On February 20, Saylors, Sr. had arranged a fishing trip with his son. When the Saylors arrived at the fishing hole about 7:30 a.m., Defendant was there. Saylors, Sr. suspected defendant and his son had been talking. Saylors, Sr. continued to fish but the defendant left with Saylors, Jr. Saylors, Sr., ever vigilant as to his duties as a probationer, quit fishing around 9:45 a.m., went home to clean up, and met his probation officer at 11:30 a.m. Saylors, Sr. returned home around noon to find defendant and Saylors, Jr. waiting for him. Saylors, Sr. testified that Defendant threatened harm to his son unless Saylors, Sr. helped them commit the burglary:

> "I said no, and he said—well, you ain't got no choice, and I said—what do you mean, I ain't got no choice and he says—I've got your son in the car. So, that was putting a threat against me, you know, if I didn't go, against my son, and he said—ah—and I'll give you $1,500—to go help us."

> "When we left the house, I told him [the defendant]—well, I said, the way you put it, you know, that threat to me, I just said I'll go, 'cause I didn't want nothing to happen to my son."

Saylors, Jr. and Saylors, Sr. both testified that defendant took them to the Ray home and dropped them off while he waited. They further testified that entry was gained through a broken garage window and the glass was "stacked up" exactly as later found by Agent Scott. Bill Monday testified that both he and Saylors, Jr. made phone calls to the Ray residence the morning of the burglary. Judge Ray confirmed that he had received three odd phone calls that morning; one hang-up, one wrong number, and one which rang continuously while he was in the shower.

The defendant did not testify.

## CORROBORATION OF ACCOMPLICE TESTIMONY

The defendant argues that the evidence is insufficient to support the verdict finding him guilty because there is no corroboration of the testimony of Saylors, Sr., Saylors, Jr. or Monday. It is argued that the only evidence which implicates the defendant, Gary Green, or establishes his identity is supplied by these three other participants, each of whom are accomplices.

██ A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State, resolves all conflicts in favor of the theory of the State, and removes the presumption of innocence. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). On this review, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn.1994). The relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Tenn.R.App.P. 12(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

██ We must begin with the established principle of Tennessee law that a felony conviction may not be based solely on the uncorroborated testimony of an accomplice. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34,

43 (1964). Where there are multiple accomplices there must be additional corroboration, since accomplices cannot corroborate each other. *Bethany v. State,* 565 S.W.2d 900 (Tenn.Crim.App.1978).

■■■ The Supreme Court of this State and this Court have addressed themselves repeatedly to the question of the character, quality and quantum of evidence necessary to constitute legally sufficient corroboration of an accomplice. The rule, simply stated, is:

> There must be some fact testified to, entirely independent of the accomplice's [accomplices'] testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identify. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplices' evidence. The corroboration need not be conclusive, but is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing alone, to little consideration.
>
> The entire conduct of the accused may be looked to for the corroborating circumstances; and if, from those circumstances, the crime may be fairly inferred, the corroboration is sufficient.

*Hawkins v. State,* 4 Tenn.Crim.App. 121, 469 S.W.2d 515, 520 (1971). See *State v. Gaylor,* 862 S.W.2d 546, 552 (Tenn.Crim.App.1992), *State v. Bigbee,* 885 S.W.2d 797, 803 (Tenn. 1994).

■■■ There is, without doubt, adequate corroboration for the fact that the crimes were committed. The guns were found by the agent in the exact location, five miles distant, hidden near the Doc Howard mansion, as described by Saylors, Jr. In addition, the "casing out" phone calls described by Monday and Saylors, Jr. are corroborated by Judge Ray. The manner of placement of the broken garage door glass described by Saylors, Sr. is corroborated by the testimony of Agent Scott.

A thorough search of the record, however, does not reveal corroboration of the testimony of the three participants implicating Gary Green in the crime or establishing his identity. No one testified to seeing defendant with the group. *Stanley v. State,* 189 Tenn. 110, 222 S.W.2d 384 (1949); nor did anyone testify that they had seen defendant at various places in close association with the others. *Pennington v. State,* 478 S.W.2d 892 (Tenn. Crim.App.1971). There is no evidence that defendant made any admission, tacit admission or inconsistent or false statement to police. He is connected to the crime only through the testimony of the three participants.

## WHO IS AN ACCOMPLICE AND HOW IS THAT DETERMINATION MADE?

■■■ An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime. *Conner v. State,* 531 S.W.2d 119 (Tenn.Cr.App.1975). The test is whether or not the alleged accomplice can be indicted for the offense. If, however, the witnesses' participation in the crime is the result of force, coercion, duress, or undue influence so that the participant does not act voluntarily, with the same intent as the principal, then the witness is not an accomplice. *Henley v. State,* 489 S.W.2d 53 (Tenn.Crim. App.1972).

■■■ Where the facts raise a sufficient question of duress or necessity that were the alleged accomplice on trial, the trial court would be required to instruct the jury on the defense of duress or necessity the question of whether a participant is an accomplice be-

comes a question of fact for the jury. *Davis v. State,* 1 Tenn.Cr.App. 345, 442 S.W.2d 283 (1969). *Conner v. State,* 531 S.W.2d 119 (Tenn.Crim.App.1975).

■ Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending, and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. T.C.A. 39-11-504 (1989). The compulsion must be immediate and imminently present and of such nature to produce a well-founded fear of death or serious bodily harm. *State v. Robinson,* 622 S.W.2d 62 (Tenn.Crim.App.1980).

■ The defense of necessity allows conduct to be justified if: [1] The person reasonably believes the conduct is immediately necessary to avoid imminent harm, and [2] the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. T.C.A. 39-11-609 (1989).

■ The claim of Saylors, Sr. that he elected to participate in the crime as a result of a threat to his son's safety is essentially uncontradicted, although not particularly persuasive. Nonetheless, his testimony raises a sufficient question of fact that, had Saylors, Sr. been on trial, the trial judge would have prudently instructed the jury on the defenses of duress and necessity. It was accordingly a question for the jury whether Saylors, Sr. was an accomplice, and whether his testimony as to the identity of the defendant as a participant in the crime is sufficient

corroboration of the testimony of Saylors, Jr. and Monday. Where the facts as to complicity of the witness are disputed and susceptible to different inferences the issue is one of fact for the jury. *Conner v. State,* 531 S.W.2d 119 (Tenn.Crim.App.1975). Here, the jury could have concluded that Saylors, Sr. was not an accomplice and therefore could have given his testimony the same weight as the testimony of any other witness without the requirement of corroboration. *Bethany v. State, supra.*

## TRIAL COURT'S INSTRUCTIONS

■ But for the jury instructions of the trial court we would affirm these convictions. The trial court instructed the jury:

> "In this case, the court charges you that the witnesses, Wallace Saylors, Sr., Wallace Saylors, Jr., and Bill Monday were accomplices in this alleged crime, and before any defendant can be convicted, you must find that these accomplices' testimony have been sufficiently corroborated."

The question whether Saylors, Sr. was an accomplice was not, in this case, a question of law for the court, but instead was a question of fact for the jury. This instruction was confusing under the facts and circumstances of this case since the trial court had, in a preceding instruction, defined an accomplice as "a person who knowingly, *voluntarily,* and with common intent with the principal offender, unites with him in the commission of the crime."

Did the jury follow the trial court's instruction that Saylors, Sr. was an accomplice as a matter of law? In that case there is not corroboration as to the identity of the defendant. Or, did the jury make its own determination that Saylors, Sr. did not act *voluntarily.* In that case his testimony would be sufficient to corroborate the testimony of the other participants. We are left to speculate which avenue of reasoning was followed by the jury.

We have no choice other than to note the plain error represented by the inappropriate and, under the circumstances, confusing instructions of the trial court. Accordingly, we reverse the convictions and remand the case to the Criminal Court of Claiborne County for a new trial under proper instructions.

WELLES and HAYES, JJ., concur.