IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 16, 2005 Session

## STATE OF TENNESSEE v. DONALD BLEVINS

**Appeal from the Circuit Court for Warren County**
**No. —9201      Larry B. Stanley, Judge**

---

**No. M2004-01906-CCA-R3-CD - Filed May 6, 2005**

---

The defendant, Donald Blevins, was convicted for contributing to the delinquency of a minor. The trial court imposed a sentence of 11 months and 29 days. On appeal, the defendant asserts that the trial court erred by failing to instruct the jury on the defenses of necessity and duress. The conviction and sentence are affirmed; the case is remanded for entry of an amended judgment to correct a clerical error.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**; **Remanded for Entry of Corrected Judgment**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Michelle M. Benjamin, Winchester, Tennessee, for the appellant, Donald Blevins.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; and Larry Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At approximately 11:55 p.m. on July 27, 2002, Lisa Norris of the McMinnville Police Department was dispatched to the Scottish Inn Motel in McMinnville. The officer was responding to a call from Terry Milburn, who had legal custody of her seventeen-year-old granddaughter, Holly Clayton. Officer Norris informed Ms. Milburn, who was at the motel looking for her granddaughter, that she would wait outside to watch in case Ms. Clayton stepped outside one of the rooms. Shortly thereafter, Officer Norris observed the defendant and Ms. Clayton walk out of a room together. Because Ms. Clayton was holding a beer and a cigarette, Officer Norris arrested her for possession of alcohol and for violation of the curfew law. The defendant, who was thirty-one years old at the time, was cited for contributing to the delinquency of a minor.

At the trial, Ms. Milburn testified that when she had found her granddaughter in the defendant's car earlier the same day, she had required Ms. Clayton to get out of the car, ordered the defendant to stay away, and then taken Ms. Clayton home. She testified that later that evening, she left Ms. Clayton alone at home while she took another grandchild to the skating rink. She returned thirty minutes later to find that Ms. Clayton was gone. Ms. Milburn, who explained that there was never any alcohol in her house, testified that while looking for Ms. Clayton, she found the defendant's vehicle parked at the Scottish Inn and ultimately contacted the police for assistance.

Officer Norris testified that upon her arrival at the Scottish Inn, she spoke with Ms. Milburn, looked outside the motel for Ms. Clayton, and then saw the defendant and Ms. Clayton emerge arm-in-arm from one of the units. According to the officer, Ms. Clayton was carrying a beer in one hand and a cigarette in the other. She recalled that there was another couple in the same hotel room. Officer Norris, who testified that there was an 11:00 p.m. curfew in the city, placed Ms. Clayton under arrest for possession of alcohol and for violation of the curfew law and issued a citation to the defendant for contributing to the delinquency of a minor.

The defendant testified that at approximately 8:30 p.m. on the night of the offense, Ms. Clayton telephoned to inform him that she was upset because she and her boyfriend had ended their relationship. According to the defendant, she threatened to harm herself if he did not take her for a drive. He stated that a few minutes later he picked her up as she was walking along the road a short distance from her grandmother's house. It was his testimony that his only purpose was to calm Ms. Clayton because of his concern for her welfare. According to the defendant, he received a call on his cellular telephone from a friend, Bryan Tidenberg, who invited him to a room Mr. and Mrs. Tidenberg had rented at the Scottish Inn. While the defendant remembered that Ms. Clayton, prior to their arrival at the motel, had asked for an alcoholic drink, he claimed that he had refused the request.

The defendant stated that after they arrived at the motel, Ms. Tidenberg, who was of legal age, asked him for some beer, so he brought in a six-pack from his car. He testified that Ms. Tidenberg put the alcohol in the refrigerator and that during the next several minutes, Ms. Clayton did not consume any alcohol. The defendant claimed that he had to leave the motel room on an errand and that when he returned to the room, Ms. Clayton had not consumed any alcohol. It was his contention that he was concerned about Ms. Clayton's being out so late but that she made a telephone call and afterward assured Ms. Tidenberg that she had permission to stay at the motel. He claimed that Ms. Clayton asked him for a beer but he refused, explaining, "[Y]ou're not drinking in my presence." The defendant blamed Ms. Tidenberg for giving Ms. Clayton the beer and testified that he left the room with Bryan Tidenberg and at that point saw Officer Norris, who asked about Ms. Clayton. He claimed that before he could answer, Ms. Clayton walked out of the room with a beer in her hand. The defendant insisted that he never gave Ms. Clayton any beer and never observed her drinking any alcohol.

On cross-examination, the defendant contended that Ms. Clayton was fearful of her grandmother who, he understood, beat her. He denied that Ms. Milburn warned him to stay away

from her granddaughter. He acknowledged that he had neither attempted to calm Ms. Clayton down at her house nor attempted to take her back home, explaining it was because of "all the stuff that happens in her house" and because she had threatened suicide if returned there. The defendant claimed that he did not have a chance to notify the police or Ms. Milburn to tell them that Ms. Clayton was at the motel room.

Bryan Tidenberg, who acknowledged that he asked the defendant to bring the beer to his room, testified that he did not observe the defendant give Ms. Clayton any of the alcohol. He stated that when the defendant left the motel for approximately twenty minutes, Ms. Clayton did ask his wife for some beer, but he recalled that his wife refused her request. It was his contention that while the defendant was still out of the room, Ms. Clayton took a beer without asking. According to Tidenberg, the defendant refused to give Ms. Clayton alcohol. For the most part, his testimony corroborated that provided by the defendant.

At the conclusion of the trial, the trial court instructed the jury that the defendant was charged with contributing to the delinquency of a minor. No objections were made with regard to the content of the instructions. There were no special requests for additional charges to the jury.

On appeal, the defendant argues that the trial court erred by failing to instruct the jury on the defenses of necessity and duress. He argues that the trial court should have instructed on the defense of duress as presented in Tennessee Pattern Jury Instruction 40.03 and the defense of necessity as provided in Tennessee Pattern Jury Instruction 40.05. Both of the charges are taken from the provisions of our code. See Tenn. Code Ann. §§ 39-11-504(a), -609.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend. VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 174 Tenn. 642, 130 S.W.2d 99 (1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990); see also Tenn. R. Crim. P. 30.

Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). When the evidence in the record fairly raises or supports the existence of a defense, the trial court is compelled to instruct the jury on the issue. Manning v. State, 500 S.W.2d 913, 915-16 (Tenn. 1973); see also Almonrode v. State, 567 S.W.2d 184, 187 (Tenn. 1978). As part of its instruction, the trial court must inform the jury that any reasonable doubt on the existence of the defense requires acquittal. Tenn. Code Ann. § 39-11-203(c); State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998); State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). This court has added that "due process requires that a criminal defendant be afforded a meaningful opportunity to present a complete defense, which includes the right to have the jury instructed regarding fundamental

defenses raised by the evidence." State v. Michael S. Nevens, No. M2000-00815-CCA-R3-CD (Tenn. Crim. App., at Nashville, April 27, 2001); see also Tenn. Code Ann. § 39-11-203(c), (d).

Whether the evidence has raised a defense and, therefore, requires a jury instruction depends upon an examination of the evidence in the light most favorable to the defendant. Bult, 989 S.W.2d at 733. The instructions should include a charge on the defense of necessity or duress if the facts would fairly support either. As necessity and duress are not classified by our code as affirmative defenses, the defendant need not prove them by a preponderance of the evidence. State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). Where the proof, however, "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that the defense does not apply.'" Id. (quoting State v. Hood, 868 S.W.2d 744 (Tenn. Crim. App. 1993)).

Necessity is a defense wherein conduct, otherwise unlawful, is justified if "[t]he person reasonably believes the conduct is immediately necessary to avoid imminent harm; and [t]he desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." Tenn. Code Ann. § 39-11-609. The Sentencing Commission Comments to this section state that the defense of necessity is applicable in exceedingly rare situations where criminal activity is "an objectively reasonable response to an extreme situation." Tenn. Code Ann. § 39-11-609, Sentencing Commission Comments. The Sentencing Commission provides an example as follows: "The necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open." Id.

Necessity has traditionally been used appropriately when the extreme situation is brought on by something other than a human act. Neil P. Cohen et al., Prevalence and Use of Criminal Defenses: A Preliminary Study, 60 Tenn. L. Rev. 957, 966 (1993). Examples of necessity include a ship violating an embargo law to avoid a storm, a pharmacist providing medication without a prescription to alleviate someone's suffering during an emergency, or one of two shipwrecked sailors pushing the other off the float to save his own life. 11 David L. Raybin, Tennessee Practice § 28.118 (1985 & Supp. 1997). Moreover, necessity requires an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm. Id.; see also State v. Green, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995) (noting that defenses of necessity and duress would have been raised by father's testimony that he had agreed to participate in burglary only because his son was directly threatened with harm if he refused).

Failure to charge the jury as to the defense of necessity can be reversible error where the facts fairly satisfy the elements. State v. Bobby Ray Jenkins, No. 03C01-9202-CR-00050 (Tenn. Crim. App., at Knoxville, Sept. 18, 1992). In Jenkins, a police officer found the defendant in a vehicle stopped in the middle of the road; the defendant was in the driver's seat and the motor was running. The defendant, who was intoxicated, had no driver's license, and had been previously convicted as a motor vehicle habitual offender, was arrested and again convicted under the Motor Vehicle Habitual Offenders Act. Id., slip op. at 2. He had presented proof at trial that the car's transmission

-4-

had malfunctioned and his friend, who had actually been driving, had left the scene to get help. The defendant had to keep his foot on the brake pedal to prevent the car from rolling down hill and needed the engine running to operate the power brakes. On appeal, a panel of this court found the defense witnesses were consistent and the defendant's testimony corroborated them. Id., slip op. at 7. The court ruled that the defendant had fairly raised a necessity defense and it was reversible error for the trial judge not to charge it to the jury. Id., slip op. at 8.

This court has also held that in order for a defendant to be entitled to the defense of necessity, he "must show an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm." State v. Watson, 1 S.W.3d 676 (Tenn. Crim. App. 1999) (citing Green, 915 S.W.2d at 832). The sentencing commission comments indicate that the statute codifies the common law and, therefore, common law distinctions are instructive. State v. Green, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998). In particular, the common law indicated as follows:

> "Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity."

Id. (quoting United States v. Bailey, 444 U.S. 394, 409-10 (1980)). The defense of necessity is generally only available when nonhuman acts prompt the illegal action. State v. Jason C. Polston, No. W2003-02556-CCA-R3-CD (Tenn. Crim. App., at Jackson, Aug. 19, 2004).

The defendant in this instance did not present evidence that he was under an immediate physical threat to provide Ms. Clayton with alcohol in order to avoid her harming herself. Further, the defendant did not produce any evidence that his actions were the only means available to avoid an imminent threat to the health of the victim. Nothing in the record indicates that the victim had any means to harm herself or was in immediate danger of doing so. The defendant was convicted of contributing to the delinquency of a minor by allowing a minor to consume alcohol. The evidence, therefore, did not properly raise the issue of necessity; thus, the trial court was not required to charge the jury on necessity.

Duress, previously distinguished from the defense of necessity, has been defined as follows:

> Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to

induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

Tenn. Code Ann. § 39-11-504(a). The Sentencing Commission Comments to this section advise that the duress defense requires that the offense must be committed because another person threatens death or serious bodily injury if the offense is not committed. Id., Sentencing Commission Comments. There must be no reasonable means to escape the compulsion to commit the offense. See State v. Robinson, 622 S.W.2d 62, 73 (Tenn. Crim. App. 1980).

The defendant argues that the trial court was required to instruct the jury on duress. Again, he claims that his motivation to take the victim to the motel, rather than home, was to prevent her from harming herself. The defendant failed, however, to present any evidence that he was forced to provide the victim alcohol in order to prevent death or serious bodily harm. Moreover, he could have easily avoided giving her access to his beer. The defendant could have taken the victim to a hospital if he feared harm. He could have left the alcohol in his car when he entered the motel. There were alternatives other than commission of this offense available to the defendant. No one threatened the defendant or a third person with harm if he did not provide the victim alcohol. Thus, duress is not fairly raised by the proof and the trial court did not err in refusing to give the instruction.

Although not raised as an issue, the judgment correctly classifies the offense as "contributing to the delinquency of a minor," but incorrectly cites Tennessee Code Annotated section 39-15-404. The proper statutory citation for the offense of contributing to the delinquency of a minor is Tennessee Code Annotated section 37-1-156. The jury was instructed under the proper section.

Therefore, the judgment of the trial court is affirmed, but remanded for re-entry to reflect the proper statutory citation. See Tenn. R. Crim. P. 36 (providing for correction of clerical mistakes on judgment forms).

 

_____
GARY R. WADE, PRESIDING JUDGE