# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 19, 2008 Session

## STATE OF TENNESSEE v. MICHAEL MATTHEW LANDERS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-C-2498     Seth Norman, Judge**

_____

**No. M2008-00491-CCA-R3-CD - Filed May 7, 2009**

_____

The defendant, Michael Matthew Landers, was convicted of driving under the influence (DUI) and driving under the influence per se, Class A misdemeanors, in the Davidson County Criminal Court. He was subsequently sentenced to concurrent terms of eleven months and twenty-nine days, four days of which was to be served in the county jail. On appeal, the defendant contends that the trial court erred by failing to instruct the jury with regard to the defense of necessity. Following review of the record, we agree with the defendant that the facts of the case, when viewed in the light most favorable to the defendant, support such a charge. As such, we reverse the convictions and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Dan R. Alexander, Nashville, Tennessee, for the appellant, Michael Matthew Landers.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and John Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On the evening of January 11, 2006, the defendant was arrested for driving under the influence on Interstate 65 in Nashville. A Davidson County grand jury subsequently returned a two-count indictment charging the defendant with DUI and DUI per se. At a later jury trial, two officers testified for the State and the defendant and his roommate testified for the defense.

Officer John Pepper was monitoring traffic on Interstate 65 when he observed the defendant's vehicle traveling at seventy-five miles per hour in a fifty-five mile per hour speed zone. Officer Pepper initiated a traffic stop and, after the defendant pulled the car to the side of the road, approached the vehicle. He immediately noticed signs of impairment from the defendant, including bloodshot eyes, an odor of alcohol, and thick or slurred speech. Officer Pepper had the defendant, who acknowledged that he had had two to three drinks, step outside the vehicle and perform several field sobriety tests, which the defendant did not successfully complete. The defendant then consented to take a breathalyzer test, and Officer Jakes was sent to the scene to perform the test. Following the required observation period, the test was performed, and the defendant's blood alcohol level was .17. The defendant was placed under arrest for driving under the influence, and his passenger in the car was taken home by cab. No speeding ticket was issued. Both officers stated that the defendant was cooperative during the period prior to his arrest. Moreover, each testified that the defendant gave them no reason why he was driving the vehicle.

The defendant testified at trial in his own behalf. According to his testimony, he and his roommate, Nathan Brantley, had gone to Church Street earlier in the evening. Brantley was the designated driver for the two, and he was driving his vehicle. The defendant stated that he had two or three cocktails prior to their departure from Church Street. The two left the area with Brantley driving his Mercedes. The defendant testified that as Brantley drove onto Interstate 65, he started feeling dizzy and nauseous. According to the defendant, because traffic was heavy and tractor trailers were "zipping" by, Brantley was unable to find a spot to safely pull the car off the road because they were in a construction zone. Brantley was eventually able to get the car parked, but it was not safe as the left side of the vehicle was still on Interstate 65 and cars were swerving around them. The defendant testified that Brantley was unable to open the driver's door because of the passing traffic and vomited inside the car. Afterwards, Brantley passed out in the driver's seat. According to the defendant, he pulled Brantley into the passenger seat and got behind the wheel. He stated that he felt he was in a "precarious situation" and had to get to safety, as he feared for both himself and Brantley, as well as other passing motorists. He testified that the felt he had no choice but to drive the vehicle to a safe spot despite that he was under the influence of alcohol. According to the defendant, he had only been driving fifteen to thirty seconds when he first saw the police lights. He stated that he was looking for a spot to pull off the road at the time. The defendant acknowledged that he was in possession of a cell phone, that he could have turned on the car's hazard lights, or could have dragged Brantley to a safe location away from the car. He acknowledged that there were "a million things" that he could have done in the situation.

Brantley also testified at trial and verified that he was driving the car when they came onto Interstate 65. He also testified that he became ill soon after and pulled to the side of the road "as much as he could" prior to passing out. He testified that there was not a complete shoulder where he stopped and that part of the car remained in the road. However, Brantley was unable to offer any further factual testimony, as he did not wake up till the defendant had already been stopped by the police.

Prior to the jury being instructed by the trial court, the defendant requested that a charge be given regarding the defense of necessity. After arguments were presented, the trial court refused the defendant's request. The jury subsequently returned guilty verdicts to both DUI and DUI per se. The trial court subsequently sentenced the defendant to concurrent sentences of eleven months and twenty-nine days, all suspended but for four days. The defendant filed a motion for new trial challenging the trial court's failure to instruct on the defense of necessity. Following the trial court's denial of the motion for trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant contends that the trial court erred in refusing to charge the jury with regard to the defense of necessity and, further, that the trial court erred in deciding factual issues critical to the defense of necessity to the exclusion of the jury. It is well-settled that the trial court has the duty to give a correct and complete charge of the law applicable to the facts of the case and that the defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury upon proper instructions by the trial court. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). This duty includes "giving jury instructions concerning fundamental issues to the defense and essential to a fair trial. . . ." *State v. Anderson*, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997). A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case. *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Jury instructions must, however, be viewed in the context of the overall charge rather than in isolation. *Sandstrom v. Montana*, 442 U.S. 510, 527, 99 S. Ct. 2450, 2461 (1979). A charge is prejudicial error only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Because questions of the propriety of jury instructions are mixed questions of law and fact, the standard of review is *de novo* with no presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

When the evidence in the record fairly raises or supports the existence of a defense, the trial court is compelled to instruct the jury on the issue. *Manning v. State*, 500 S.W.2d 913, 915-16 (Tenn. 1973). Because necessity is a general defense, as opposed to an affirmative defense, if the evidence fairly raises the defense, the trial court must submit the issue to the jury. T.C.A. § 39-11-203(c) (2006); *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994) (citing *State v. Hood*, 868 S.W.2d 744, 748 (Tenn. Crim. App. 1993)). Whether the evidence has raised a defense and, therefore, requires a jury instruction depends upon an examination of the evidence in the light most favorable to the defendant because the trial courts and appellate courts must avoid judging the credibility of the witnesses when making this determination. *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1994). Where the proof "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that the defense does not apply.'" *Culp*, 900 S.W.2d at 710.

The defense of necessity considers conduct otherwise unlawful to be legally justified if: (1) the person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. T.C.A. § 39-11-609 (2006). The Sentencing Commission Comments to this section state that the defense of necessity is applicable in exceedingly rare situations where criminal activity is "an objectively reasonable response to an extreme situation." T.C.A. § 39-11-609, Sentencing Comm'n Cmts. This court has held that in order for a defendant to be entitled to the defense of necessity, he "must show an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm." *State v. Watson*, 1 S.W.3d 676, 678 (Tenn. Crim. App. 1999) (citing *State v. Green*, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995)).

In *State v. Green*, this court ruled that because the statute codifies the common law, common law distinctions between the defenses of duress and necessity are instructive. *State v. Green*, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998). In particular, the common law indicates that:

> Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity.

*Id*. (quoting *United States v. Bailey*, 444 U.S. 394, 409-10, 100 S. Ct. 624, 634 (1980)). Based upon these comments, this court has held that the defense of necessity is, thus, generally only available where nonhuman acts prompt the illegal action. *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998); *see also State v. Jason C. Polston*, No. W2003-02556-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 19, 2004). However, in 2007, our supreme court addressed this issue and noted that "[m]odern cases . . . have tended to blur th[e] traditional distinction between duress and necessity." *State v. Bledsoe*, 226 S.W.3d 349, 356 n.5. The court noted that in Tennessee, "the statutory defenses of duress and necessity are not limited to any particular source of harm." *Id*.

According to the defendant, his case "clearly" presents facts warranting a charge on the defense of necessity. He argues that, based upon the defendant's testimony, the risk of harm created by commission of the offense was outweighed by the risk to lives if he had failed to move the car off the busy interstate. In its order denying relief, the trial court found as follows:

> In the case under examination, the defendant's actions may have initially been sufficient to raise the issue of necessity as a defense to his illegal activity. However,

-4-

in the opinion of the Court, the fact that he continued to violate the law after being allowed ample opportunity to cease such illegal conduct basically destroyed any right to assert the defense of necessity. The defendant testified that Mr. Brantley stopped the vehicle just north of the Wedgewood Avenue exit on I-65 South. At that time, he wrested control of the vehicle from Mr. Brantley and proceeded to drive past the aforementioned exit and head home instead of simply seeking a safe location where he could park the vehicle. At the point he admittedly decided to continue driving home, the defense of necessity became unavailable to the defendant.

With regard to the findings and statements made by the trial court after argument, the defendant further argues that the trial court invaded the province of the jury as to factual issues. A reading of the transcript and the order tends to support this argument. The following statements were made by the trial court prior to charge being given to the jury:

. . . as I understand what he said. He puts [the defendant], when he first saw him, just south of Wedgwood Avenue where Wedgwood goes under the interstate. It is south of Wedgwood but it is north of the on ramp.

I am having a hard time understanding how anybody could accelerate to 75 miles an hour from this distance to this distance and get over in the center lane in that distance, which indicates to The Court that the defendant drove by the off ramp - - that is the defendant drove by, not the owner of the automobile but the defendant drove by the off ramp on Wedgwood Avenue is what this map indicated to The Court.

I pass that place every day and I try to put that out of my mind, but I know the distance of most on ramps and you can't accelerate from standing still to 75 miles an hour in that distance. I don't care if you are driving the hottest Mercedes in the world, but you can't get out in the center lane, that is the part that concerns me.

If he did, in fact, pass the exit ramp then necessity is out, that is all there is to it.

We agree with the defendant that the trial court should not have reached the determination on its own that the defendant drove past the Wedgewood exit ramp, as the proof on the issue was somewhat contradictory and should have been viewed in the light most favorable to the defendant in reaching the determination of whether to the charge the defense. As argued by the defendant, this did invade the province of the jury to determine issues of fact. *See Shropshire*, 874 S.W.2d at 639.

Moreover, we agree with the defendant's assertion that the proof, when viewed in the light most favorable to the defendant, raised the defense of necessity. Indeed, the trial court itself appeared to agree that the defense was established initially. The court only refused to give the requested instruction based upon its improper determination that the defendant continued to violate

the law after being given ample opportunity to stop. There is no dispute in this case that the defendant voluntarily got behind the wheel of the car with a blood alcohol level of .17 after Mr. Brantley became ill. However, the defendant testified that he did so only to avoid a greater risk of harm to both himself and Mr. Brantley, as well as other motorists on Interstate 65. He testified that when the car was stopped on the side of the road, it remained partially in the lane of the roadway, that traffic was heavy, and that cars were swerving around them and tractor trailers were "zipping" by. According to his testimony, he had only been driving the car for fifteen to thirty seconds when he was stopped. While we do not judge the merits of the defendant's assertions, we conclude that the testimony given at least sufficiently raised the defense and raised the question of whether this was an "extremely rare situation" where the criminal activity was "an objectively reasonable response" to the situation. As such, the requested instruction should have been given to the jury.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are reversed and the case is remanded for a new trial at which the defense of necessity should be charged.

_____
JOHN EVERETT WILLIAMS, JUDGE