# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### MAY SESSION, 1998

FILED

July 2, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
     Appellee          )
                             )
vs.                          )
                             )
MARIO HAWKINS,               )
                             )
     Appellant         )

No. 01C01-9701-CR-00014

DAVIDSON COUNTY

Hon. Thomas H. Shriver, Judge

(Premeditated First Degree Murder)


For the Appellant:

**William P. Griffin, IV**
301 Realtors Bldg.
306 Gay Street
Nashville, TN  37201

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Ellen H. Pollack**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**Victor S. (Torry) Johnson III**
District Attorney General

**Kymberly Haas**
Asst. District Attorney General
Washington Sq., Suite 500
222-2nd Ave. N
Nashville, TN  37201-1649


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

## OPINION

The appellant, Mario Hawkins, was found guilty by a Davidson County jury of the premeditated first degree murder of Cedric Mosley and was sentenced to life imprisonment in the Department of Correction. In this appeal as of right, the appellant challenges:

> I. The trial court's denial of the appellant's motion for judgment of acquittal and the sufficiency of the convicting evidence based upon the absence of corroborating proof;
>
> II. The trial court's failure to instruct the jury as to the lesser offenses of voluntary manslaughter, criminally negligent homicide, and facilitation of murder; and
>
> III. The trial court's admission of the autopsy report as offered by State's witness Dr. Harlan.

After a review of the record now before us, we affirm the judgment of conviction entered by the trial court.

**Background**

At approximately 6:30 p.m. on January 11, 1995, Metro Police found fifteen year old Cedric Mosley laying face down in a pool of blood on a sidewalk near the Cumberland View housing project in North Nashville. The victim was transported to a hospital where he died early the next morning as a "result of shotgun wounds to the head and right hip, the primary contributor being shotgun pellet wound injuries to the brain." Earlier that afternoon, around 5:00 p.m., the victim and Lamont McDonald had been involved in a heated argument over "a girl." The argument subsided and McDonald left upset over the encounter. Shortly before 6:30 p.m., McDonald and three associates, later identified as the appellant, Lamont Johnson, and Kevin Walker, returned to the Cumberland View housing project to look for Mosley. As a result of the

2

conduct which followed, all four men were subsequently indicted for the first degree murder of Cedric Mosley.

At trial, the State presented the testimony of co-defendants Kevin Walker and Lamont Johnson. Also testifying as material witnesses for the State were Rodney Walker, Otis Stewart, and Mario Gray. Both Rodney Walker and Kevin Walker observed the initial encounter between Mosley and McDonald. Fifteen year old Rodney Walker testified that neither Mosley nor McDonald was armed with a weapon. He stated that the altercation was merely verbal, involving some swearing, but, no physical interaction. Nineteen year old Kevin Walker, a co-defendant, testified that he also witnessed the argument. During the altercation, Kevin Walker remained in McDonald's 1995 green Ford Taurus. Although he did not see either party armed with a weapon during the initial encounter, he stated that, shortly after this confrontation, he observed Cedric Mosley with a gun. After the argument subsided, Lamont McDonald and Kevin Walker left the area in McDonald's car.

Kevin Walker testified that, when McDonald returned to the car, he was very angry. McDonald paged Lamont Johnson. Johnson testified that, during his telephone conversation with McDonald, McDonald sounded "upset" and "furious." McDonald then proceeded to a house on Douglas Street in East Nashville, later determined to be the home of the appellant, where the two young men joined Lamont Johnson. Shortly thereafter, the appellant returned to his home on Douglas Street. Johnson, McDonald, and the appellant engaged in a brief discussion, after which, the four men left the appellant's house armed with two twelve-gauge shotguns and one .32 caliber handgun. McDonald was armed with the handgun, while the appellant and Johnson each were in possession of a sawed-off shotgun.[1]

---

[1]The proof at trial indicated that the shotgun carried by Lamont Johnson was not functioning properly and could not be fired.

3

The group proceeded to a birthday party for Johnson's younger sister, where they ate birthday cake and ice cream. The weapons remained in McDonald's vehicle. The group then left the party and headed toward Cumberland View housing project. Walker testified that, although he never heard any conversation about what the others intended to do, he was under the impression that they planned to scare somebody, namely Cedric Mosley. McDonald informed the others that he believed that Mosley would be in the area of 25th Avenue North, because that is where he liked to "hang out." McDonald parked his car on 26th Avenue North. McDonald, Johnson, and the appellant exited the vehicle, each armed with a weapon. Walker remained in the vehicle with the doors locked. Outside the car, Johnson positioned himself behind a tree, while McDonald and the appellant began looking for the victim.

McDonald and the appellant encountered Cedric Mosley, who was talking with Otis Stewart and Mario Gray.[2] McDonald had his weapon pointed at Mosley. Mosley and his companions were not armed. McDonald and Mosley argued briefly. Stewart testified that Mosley begged him to tell McDonald, his cousin, to "quit and leave him alone." Stewart begged McDonald to put the gun down, but he refused. McDonald then fired his weapon into the air. Mosley again told McDonald to leave him alone. Mosley and Stewart began running. Lamont Johnson, who remained hiding behind a tree, testified that the appellant then fired his shotgun, hitting Mosley in the upper body. The appellant fired again, hitting Mosley, who had then fallen to the ground, a second time. The appellant placed a "slug" in his shotgun and stated that "he wanted to put this in the m-----f----." All three shots fired by the appellant struck the helpless Mosley. While Mosley lay wounded on the pavement, the appellant, Johnson, and McDonald ran back to McDonald's vehicle.

Once in the car, McDonald stated to the others, "He's not dead, he's not dead. . . . Man, I've got to make sure he's dead, you know." The group then drove back to

---

[2] Rodney Walker was standing across the street during this incident.

the appellant's residence. Upon arriving at the appellant's East Nashville residence, the appellant unloaded the weapons from the vehicle and informed his mother that "[h]e had smoked him a m-----f-----."

At the appellant's trial, Otis Stewart, Rodney Walker, and Mario Gray, the three non-accomplice eyewitnesses, testified that the individual that had shot Mosley three times with a shotgun was wearing a black and purple Fila coat with the hood pulled over his head. The proof revealed that the appellant was wearing a Fila coat on the night of the murder and that neither Johnson nor McDonald were wearing such a coat. Moreover, Mario Gray, while on the stand, identified the appellant as the shooter.

Based upon this evidence, the jury returned a guilty verdict of premeditated first degree murder.

## I. Sufficiency of the Evidence

The appellant first contends that the trial court erroneously denied his motion for judgment of acquittal at the conclusion of the State's case-in-chief, and, that the proof is not sufficient to support a verdict of premeditated first degree murder.[3] Specifically, he alleges that the accomplice testimony of Kevin Walker and Lamont Johnson was not independently corroborated because the testimony of Mario Gray does not "fairly and

---

[3]As to the appellant's challenge to the trial court's denial of his Motion for Judgment of Acquittal, the State contends that the appellant has waived this issue because he presented evidence on his behalf after the motion was denied. (citing Mathis v. State, 590 S.W.2d 449, 453 (Tenn. 1979)). "Rule 29(c) of the Tennessee Rules of Criminal Procedure permits a motion for judgment of acquittal to be renewed within 30 days of the date of the order of the sentence." State v. Brewer, 945 S.W.2d 803, 805 fn 2 (Tenn. Crim. App. 1997). Defense counsel raised the issue of the sufficiency of the evidence in his motion for new trial; thus, the issue has not been waived. Id. When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. State v. Blanton, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996) (citation omitted). As these two issues, i.e., judgment of acquittal and sufficiency of the evidence, are inextricably linked, we elect to consider these issues together. See Brewer, 945 S.W.2d at 805 fn 2.

legitimately . . . connect the defendant with the commission of the crime charge[d]." We disagree.

To determine whether the evidence is sufficient to sustain a conviction, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, the appellant bears the burden of demonstrating that the evidence, viewed in the light most favorable to the State, is insufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). See also State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). If the appellant fails to carry his burden, it is the duty of the appellate courts to affirm the challenged conviction.

## A. Corroboration of Accomplice Testimony

A felony conviction may not be based solely upon the uncorroborated testimony of an accomplice. State v. Maddox, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997) (citations omitted). Moreover, where there are multiple accomplices, additional corroboration is necessary, because accomplices cannot corroborate each other. State v. Green, 915 S.W.2d 827, 830 (Tenn. Crim. App. 1995) (citation omitted).

To corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it." State v. Billingsley, No. 01C01-9506-CC-00166 (Tenn. Crim. App. at Nashville, May 16, 1996), perm. to appeal denied, (Tenn. Oct. 28, 1996) (citing Clapp v. State, 30 S.W. 214, 216 (Tenn. 1895)). "This corroboration must

6

consist of some fact or circumstance which affects the identity of the defendant."[4] Id. In other words, the corroborative evidence must be inconsistent with the innocence of the accused and do more than raise a mere suspicion of guilt. However, the corroboration need not be conclusive. Green, 915 S.W.2d at 831 (citations omitted). The corroboration is sufficient "if this evidence, standing alone, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing alone, to little consideration." Id. (citations omitted); see also State v. Henley, 774 S.W.2d 908, 913 (Tenn. 1989); McKinney v. State, 552 S.W.2d 787, 789 (Tenn. Crim. App. 1977). Furthermore, the jury is to determine the degree of evidence necessary to corroborate the testimony of an accomplice. Billingsley, No. 01C01-9506-CC-00166 (citation omitted); see also Sherrill v. State, 321 S.W.2d 811, 815 (Tenn. 1959).

Three non-accomplice eyewitnesses to Mosley's murder identified the perpetrator as a young man wearing a black and purple Fila coat with the hood covering his head. The proof revealed that the appellant was the only individual present at the scene wearing such a coat. Additionally, one of the eyewitnesses, Mario Gray, made a physical identification of the appellant during the trial. The appellant challenges Gray's identification as being an "illegitimate" accusation. Specifically, he questions the credibility of Gray's testimony because (1) Gray has prior juvenile adjudications, (2) he admitted that he only saw the shooter's complexion and height, and (3) he failed to inform law enforcement officials of his identification of the shooter until testifying at trial. During his testimony, Gray admitted that he knew McDonald and that McDonald was not the shooter. He stated that the shooter was wearing the Fila coat. He testified that he had been in juvenile detention at the same time as the appellant and recognized the appellant as the shooter during this time.

---

[4]The term "identity" refers not to an identification of the accused, but rather, to the accused's association with the crime. "[T]he corroborative evidence must at least confirm the accomplice as to the accused's actual participation in the crime (or "connection with the offense"), or (thus it sometimes put) as to the accused's identity with the participators . . . ." FT Wigmore, *Evidence in Trials at Common Law* § 2059, at 423 (Rev. 1978).

7

We reiterate that the jury is the primary instrument of justice to determine the weight and credibility to be given to the testimony of the witnesses and not this court. Cabbage, 571 S.W.2d at 835. Although we agree that Mario Gray's in-court identification of the appellant is weak, when considered with the testimony of the two other eyewitnesses, Gray's testimony constitutes sufficient corroboration to sustain the appellant's conviction. See, e.g., State v. Duncan, No. 03C01-9511-CC-00367 (Tenn. Crim. App. at Knoxville, Mar. 18, 1997), perm. to appeal denied, (Tenn. Jan. 5, 1998). The appellant's allegation that the accomplice testimony was not sufficiently corroborated is without merit.

## B. Elements of Premeditated Murder

As we have determined that the accomplice testimony is sufficiently corroborated, we further find the proof sufficient to support a conviction for premeditated first degree murder. First degree murder not committed in the perpetration of a crime requires the "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1994 Supp.).[5] A death caused by the intentional act of another is presumed to be second degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). Thus, the State must prove premeditation and deliberation to raise the offense to first degree murder. Id. Premeditation necessitates "the exercise of reflection and judgment," Tenn. Code Ann. § 39-13-201(b) (1991), requiring "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Deliberation, on the other hand, is defined as a "cool purpose . . . formed in the absence of passion." Brown, 836 S.W.2d at 538 (citations and internal quotations omitted). Deliberation also requires "some period of reflection, during which the mind is free from the influence of excitement." Id.; see also Tenn. Code Ann. § 39-13-201(b)(2) (1991) (*deleted* 1995).

---

[5]Effective July 1, 1995, deliberation is no longer an element of first degree murder not committed in the perpetration of a crime. Tenn. Code Ann. § 39-13-202(a)(1) (1995 Supp.).

The elements of premeditation and deliberation are questions for the jury and may be inferred from the circumstances surrounding the killing. The proof introduced at trial established that Lamont McDonald and the victim, Cedric Mosley, engaged in a heated argument over a girl. McDonald retreated to his vehicle and contacted Lamont Johnson and the appellant. Prior to the shooting, the victim was unknown to the appellant. The appellant secured two shotguns and a handgun from his residence, as the group made plans to locate Cedric Mosley. Upon locating the victim, McDonald, armed with the handgun, confronted Mosley. Mosley pleaded for McDonald to put the weapon away. During this confrontation, the appellant ran out from behind McDonald brandishing a shotgun and proceeded to fire the weapon at Mosley. Although Mosley attempted to run away, the appellant fired at him again, causing him to fall to the ground. The appellant then loaded his weapon with a "slug," and, again, shot the victim. Upon returning to his residence, the appellant notified his mother that "[h]e had smoked him a m-----f-----." From these facts, we conclude that the proof was more than sufficient to support the elements of premeditation and deliberation. Tenn. R. App. P. 13(e). See also State v. Bland, No. 02C01-9412-CR-00281 (Tenn. Crim. App. at Jackson, Mar. 27, 1996), reh'g denied, (Tenn. Crim. App. May 1, 1996), aff'd by, 958 S.W.2d 651 (Tenn. Dec. 1, 1997), cert. denied, -- U.S. --, 118 S.Ct. 1536 (Apr. 20, 1998). Accordingly, this issue is without merit.

## II. Lesser Offenses

In his next issue, the appellant complains that the trial court erred in failing to charge the applicable lesser offenses, including facilitation of a felony and all degrees of criminal homicide including manslaughter and criminally negligent homicide. In support of his argument, he contends that the testimony of Kevin Walker established that it was the group's intent to scare Cedric Mosley, not to kill him. Moreover, the

appellant argues that because the appellant furnished the weapons, a charge of facilitation of a felony is warranted.

A trial court must fully instruct the jury on the general principles of law relevant to the issues raised by the evidence, including instructions on lesser offenses included in the indictment. See Tenn. Code Ann. § 40-18-110(a)(1990). However, before an instruction on a lesser offense is warranted, two preliminary determinations must be made. First, the trial court must determine the lesser offenses of the offense charged in the indictment. See State v. Elder, No. 03C01-9702-CR-00053 (Tenn. Crim. App. at Knoxville, Apr. 23, 1998) (citing State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); see also U.S. CONST. amend. VI.; Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 418-419 (1932)). Second, after determining the lesser offenses, the court must determine whether such an instruction on any of the lesser offenses is warranted by the evidence. Elder, No. 03C01-9702-CR-00053 (citing State v. Vance, 888 S.W.2d 776, 780 (Tenn. Crim. App. 1994)). Where there is no proof in the record to support the instruction, no jury instruction on the lesser offense need be submitted. Elder, No. 03C01-9702-CR-00053 (citing Trusty, 919 S.W.2d at 311). In Keeble v. United States, the United States Supreme Court held that "[a] defendant is entitled to an instruction on a lesser . . . offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater." Keeble, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995 (1973) (internal footnote omitted) (emphasis added); see also Trusty, 919 S.W.2d at 311; Fed. R. Crim. P. 31(c). Thus, the "trial court must determine whether the evidence, when viewed in the light most favorable to the defendant's theory of the case, would justify a jury verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense." Elder, No. 03C01-9702-CR-00053 (citations and footnote omitted) (emphasis in original).

The evidence, in this case, even when reviewed in the light most favorable to the appellant, is not sufficient for a rational trier of fact to find the elements of voluntary manslaughter, criminally negligent homicide, or facilitation of murder. Moreover, the proof supports no conclusion other than that the appellant, armed himself and his associates with weapons, and in the exercise of reflection and judgment calmly and in cold-blood executed the unarmed Cedric Mosley. Accordingly, the trial court was under no duty to instruct on these challenged lesser offenses. This issue is without merit.

### III. Introduction of Autopsy Report

In his final issue, the appellant complains that the trial court improperly permitted the introduction of the autopsy report as evidence in the State's case-in-chief through the testimony of Dr. Charles Harlan. Specifically, he argues that the autopsy report could only be entered into evidence under three provisions, *i.e.*, records of a regularly conducted activity, Tenn. R. Evid. 803(6); public records and reports, Tenn. R. Evid. 803(8); or as authorized by Tenn. Code Ann. 38-7-110 (1994 Supp).[6] He contends that, since Dr. Harlan was not the Chief Medical Examiner for the State of Tennessee at the time of the trial and because Dr. Harlan did not participate in the actual post-mortem examination, the autopsy report was never properly qualified under any of these provisions. We disagree.

At trial, the State established Dr. Harlan as the custodian of the records and proceeded to introduce the autopsy report under the business record exception. <u>See</u>

---

[6]Tenn. Code Ann. § 38-7-110 provides that
(a) The records of the division of post-mortem examination, the county medical examiner, or transcripts thereof certified to by the chief medical examiner . . . shall be received as competent evidence in any court of this state of the facts and the matters therein contained.
. . .
(c) The . . . autopsy reports shall be public documents.

11

Tenn. R. Evid. 803(6). Business records are admissible as an exception to the rule against the introduction of hearsay evidence. See Tenn. R. Evid. 803(6). A business record may be introduced by the custodian of those records or any other qualified witness. See State v. Baker, 842 S.W.2d 261, 264 (Tenn. Crim. App. 1992). The custodian of the record to be introduced must be able to testify as to the identity of the record, the mode of preparation, and whether the record was made in the regular course of business at or near the time of the recorded event. Id. Dr. Harlan testified that, in January 1995, he held the position of Chief Medical Examiner for the State of Tennessee. He explained that the "primary function of the Chief Medical Examiner . . . is being [the] custodian of the records," and, by law, the custodian of autopsy reports. See Tenn. Code Ann. 38-7-103(1994 Supp.). He continued that, "[a]s part of [his] duties as Chief Medical Examiner, [he] reviewed all autopsies which came to [him]" and he maintained all autopsy reports as the custodian of the records. He stated that the autopsy reports must be prepared as a part of the business practices of the Medical Examiner's Officer and the reports are prepared contemporaneously or as near as possible to the actual performance of the autopsy. He testified that he was the keeper of the record for the autopsy belonging to Cedric Mosley. Based upon Dr. Harlan's qualifications and testimony, we conclude that the trial court properly admitted the autopsy report and Dr. Harlan's contemporaneous testimony into evidence.

In addition to admission under Tenn. R. Evid. 803(6), the autopsy report was also admissible under Tenn. R. Evid. 803(8), as the record constitutes a public record or report. See also Tenn. R. Evid. 901(b)(7). Rule 803(8) permits the admission of a record of a public official acting under an official duty to report accurately. See State v. Wingard, 891 S.W.2d 628, 635 (Tenn. Crim. App. 1994). Pursuant to Tenn. Code Ann. § 38-7-109 (Supp. 1994), the medical examiner is under the duty to immediately investigate the circumstances of the death and record his findings in triplicate, a copy of this report must be forwarded to the Chief Medical Examiner of the State. Additionally, Tenn. Code Ann. § 38-7-110 establishes that autopsy reports are to be

12

perceived as public documents which shall be received as competent evidence in any court of this state. This issue is without merit.

## Conclusion

For the reasons set forth herein, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
JERRY L. SMITH, Judge