IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1998 SESSION



FILED

November 6, 1998

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9708-CR-00313 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable Chris Craft, Judge |
| MARCUS A. TERRY, | ) | |
| | ) | (Vehicular Homicide) |
| Appellant. | ) | |

FOR THE APPELLANT:

Gerald Stanley Green
147 Jefferson Avenue
Suite 404
Memphis, TN 38103
(On Appeal)

Coleman W. Garrett
200 Jefferson Avenue
Suite 850
Memphis, TN 38103
(At Trial)

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

Peter M. Coughlan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

Daniel R. Woody
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

Patience R. Branham
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103-1947

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# O P I N I O N

The appellant, Marcus Terry, referred herein as the defendant, appeals as of right from the judgment of the Shelby County Criminal Court as a result of a jury verdict finding him guilty of two counts of vehicular homicide and assessing fines of $10,000 for each offense. The trial court imposed sentences of fifteen years, as a career offender, for each offense to run consecutively with a number of unrelated offenses. The defendant presents two appellate issues:

1. Whether or not the appellant's conviction must be reversed when the evidence introduced at trial fairly raised either the defense of duress and necessity but the state did not prove the non-applicability of those defenses by proof beyond a reasonable doubt and only proved the appellant's mental state of recklessness by circumstantial evidence.

2. Whether or not the trial court abused its discretion when the trial court refused to accept the guilty plea of the appellant during the trial, based on reasons unrelated to the voluntariness of the appellant's plea.

After a review of the entire evidence in this record, the briefs of the parties, and the applicable law, we affirm the trial court's judgments.

## FACTUAL BACKGROUND

On April 11, 1995, Mrs. Deborah Hill, and her sister, Mrs. Walterine Crowder, were killed in an automobile collision in Shelby County. Amberly Hill, two-year-old daughter of Mrs. Deborah Hill, was injured in this collision.

John P. Hardy, special agent for the Tennessee Bureau of Investigation, testified on April 11, 1995 he was employed by the Germantown Police Department as a patrolman. On April 11, 1995, Officer Hardy and Officer Chad Cunningham were on traffic patrol observing westbound traffic on Poplar Avenue. Officer Hardy observed a gray Buick, traveling westbound on Poplar without a license plate on the rear bumper. The plate was illegally displayed in the rear windshield. Officer Cunningham pulled in behind the Buick

2

to investigate. Officer Hardy observed the plate had an expired October, 1994 tag on it. Officer Cunningham turned on his blue lights in an attempt to stop the Buick. The driver slowed down and two passengers gestured to the side of the road indicating the driver would pull over. Both the Buick and the police car were in the middle lane, and Officer Hardy believed the driver was going to pull over behind an 18-wheeler in the right lane. Instead, the Buick sped up and got in front of the 18-wheeler. Officer Cunningham followed behind the Buick.

Suddenly, Officer Hardy observed a large puff of smoke come from the Buick and "it just took off at an extremely high rate of speed." Officer Hardy estimated he and Officer Cunningham were going about 50 miles per hour when the Buick took off. Believing it was a traffic stop, the officers reduced their speed since "[they] didn't have a chance if [they'd] wanted to stay with them and try to catch them."

As the squad car approached the intersection of Kirby Road and Poplar Avenue, Officer Hardy observed smoke and debris and realized there had been a major accident involving the gray Buick. Officer Hardy saw the Buick's engine and transmission were torn from the body of the car. Officer Hardy also saw a Peugeot that had been struck by the Buick. Officer Hardy went to the Peugeot where he found the two women and a small child crying. Officer Hardy was relieved by a paramedic and another person, who identified himself as a physician, and these two assisted the two women in the Peugeot. Officer Hardy proceeded to the Buick and saw the defendant in the driver's seat holding the steering wheel. The defendant was slumped over in a semi-dazed position. A passenger in the backseat sat up and then lay down again. Officer Hardy saw a small scratch on the defendant's head and a cut on his ear. In the meantime, Officer Cunningham was chasing a suspect who had run from the Buick. At 4:45 p.m., Officer Hardy observed this intersection was heavily traveled. Before leaving the scene, Officer Hardy did not observe any unusual activity in the Buick. Officer Hardy was aware that a .45-caliber automatic pistol was found in some hedges adjacent to the accident scene.

Mr. Leslie W. Bjorklund, Jr., a Federal Express pilot, testified he and his young daughter were traveling eastbound on Poplar Avenue. At the intersection of Poplar Estates and Poplar Avenue, Mr. Bjorklund observed a police car, with its blue lights on, following an older model car westbound on Poplar. Suddenly, Mr. Bjorklund saw a "gray or dark-ish colored plume of smoke exiting from the rear of that car" and the car sped away from the police car. Mr. Bjorklund estimated both the older car and the police car were traveling about 40 miles per hour when they passed him. Mr. Bjorklund looked over his left shoulder through the rearview mirror and estimated the older car accelerated to 70 miles per hour.

Mr. Christopher Graham testified he was westbound on Poplar Avenue on April 11, 1995, occupying the middle lane of the three westbound lanes. Mr. Graham estimated his speed at 40 miles per hour when a gray Buick passed him on the left and swerved into his lane. Mr. Graham testified the gray Buick was going about 90 miles per hour.

On April 11, 1995, Mrs. Hollye Harrison-Guy was in her office on the sixth floor of a building on the corner of the intersection of Kirby and Poplar. Mrs. Harrison-Guy heard some sirens and looked out her window down to the intersection. She observed a dark automobile go through the intersection "extremely fast." This car was westbound on Poplar. Mrs. Harrison-Guy heard a loud explosion and saw something come up into the air and fall back down to the ground. She then observed a westbound police car slowing to a stop at the intersection. Mrs. Harrison-Guy estimated the speed of the dark car at 70 miles per hour or more.

Officer Chad Cunningham, patrolman with the Germantown Police Department, testified he and Officer Hardy were sitting in their squad car observing traffic on Poplar Avenue. Officer Cunningham saw a gray Buick westbound on Poplar with an illegally displayed license plate in the rear window. The Buick had three occupants. Officer Cunningham followed the Buick in an attempt to stop it. As Officer Cunningham activated his blue lights, the two passengers turned and looked at the officers and the driver gestured as if he was going to pull over. However, the driver sped up, changed lanes, and

4

pulled in front of an 18-wheeler. Officer Cunningham pulled in behind the Buick, believing it would stop. Instead the driver accelerated to an extremely high rate of speed, pulling away from the squad car at an estimated speed of 80 miles per hour. Officer Cunningham observed a puff of smoke come from the rear of the Buick. Officer Cunningham then "broke off" any attempt to stop the Buick, since it was a traffic stop.

When Officer Cunningham approached the intersection of Poplar and Kirby, he observed a large cloud of white smoke and debris in the air and realized an accident had occurred. Officer Cunningham radioed for paramedics, fire equipment, and assistance. Officer Cunningham saw the Buick down the road and a Peugeot on the south side of Poplar with damage to the driver's side. As Officer Cunningham got out of his squad car, he heard a bystander yelling "there he goes, there he goes." Officer Cunningham saw one of the occupants of the Buick running southbound through some trees.

Officer Cunningham testified he chased this individual while his partner went to the Peugeot. Officer Cunningham chased this individual to Poplar Pike where the individual pulled a lady from her vehicle. Officer Cunningham attempted to talk the individual out of the car, but the individual put the car in drive, pushed two cars out of his way, and took off at a high rate of speed. After the Memphis Police arrived, Officer Cunningham returned to the accident scene and saw the other two occupants in custody. Officer Cunningham testified he went to an area south of the accident scene and observed a pistol that had been found by a bystander.

Mr. Richard Hall, Captain with the Germantown Police Department, testified he was called to an accident scene at Poplar and Kirby. Captain Hall took photographs of the accident scene, a beeper, and a pistol. Captain Hall identified the pistol as a Llama .45 automatic with six live rounds in the magazine.

Mr. John Barry O'Neill, Jr., a firefighter/paramedic with Special Operations of the Memphis Fire Department, testified he was standing in the parking lot of his apartment complex when he heard squealing tires and a major impact or explosion. Mr. O'Neill

5

looked up and saw a gray Buick that was airborne. The Buick had spun 180 degrees and was traveling backwards through the air. Mr. O'Neill saw parts of the Buick's engine and other parts flying in all directions. Mr. O'Neill also observed an individual running, who he thought might be an injured occupant. Mr. O'Neill told his roommate, Joe Merritt, a paramedic with the Germantown Fire Department, to grab his medical equipment. Mr. O'Neill got his first-aid equipment and ran to the Peugeot while Merritt ran to the Buick. In the Peugeot, Mr. O'Neill found two women and a small child. The two women were seriously injured, and Mr. O'Neill gave them what first-aid he could, while helicopters were summoned to take the women to the hospital. Mr. O'Neill described both women as being in critical condition.

Ms. Ghedda Cianciola testified she was eastbound on Poplar in the left lane at Poplar and Kirby. Ms. Cianciola testified she saw a car coming at her, but the car went past her. As she watched in her rearview mirror, this oncoming car struck a car behind her. Ms. Cianciola described the impact sound like "a tank running into -- you just heard metal, just impact, and you could see stuff just flying all through the air." About this time, Ms. Cianciola saw a police car arrive at the intersection.

Mrs. Kelli Winkel testified she was driving her 1994 Dodge Caravan eastbound on Poplar in the turning lane, attempting a left turn into McDonald's. Mrs. Winkel's nine-year-old daughter was in the right front seat. Mrs. Winkel testified she looked up and saw "a car speeding at me, probably 60, 70, 80 miles per hour coming right at me, and I'm thinking, I'm fixing to die." Mrs. Winkel buried her head and threw up her hand to protect her daughter. She then heard a loud explosion, looked up, and saw a car behind her had been struck. Mrs. Winkel looked at the car beside her and saw a man get out of the car and start running. The driver of this car was slumped over the wheel.

Dr. Jerry T. Francisco, Shelby County Medical Examiner, testified he performed an autopsy on Mrs. Walterine Crowder. Dr. Francisco testified Mrs. Crowder died from multiple injuries consistent with an automobile collision. As to Mrs. Deborah Hill, Dr.

6

Francisco conducted a post-mortem examination of her body and found Mrs. Hill died from multiple injuries as a result of blunt trauma to the body. Mrs. Hill's multiple injuries were consistent with an automobile collision. Dr. Francisco found no other cause of death for both women other than multiple injuries.

In his own behalf, the defendant testified that he received a call from a friend, Rodney McClinton, in which McClinton requested him to take McClinton to the correctional center to pick up something. McClinton asked if a mutual friend, Willie Harris, could ride with them. Upon leaving the correctional center, the defendant got on Poplar Avenue since it would take him back to the city. The defendant was driving a gray Buick Regal westbound on Poplar when he saw a police cruiser to his right. McClinton was in the rear and Harris was in the right front seat. The defendant testified the police cruiser got behind him and activated its blue lights. Harris told the defendant "to keep going, don't stop." The defendant attempted to pull over, but an 18-wheeler was blocking him. The defendant turned and gestured to the officers that he was going to pull over, but Harris pulled a gun and told him to keep going.

The defendant testified he tried to reason with Harris, but Harris just said "don't stop." At this time, the defendant estimated his speed at five miles per hour over the speed limit. The defendant testified as they approached the hill at Poplar and Kirby, Harris turned to him and struck him in the head. Then, the defendant hit the gas and went through the intersection. The defendant testified he cleared the intersection and saw a car turning in front of him and the car panicked and stopped. The defendant testified he was not sure where the impact occurred, but estimated his speed at 65 miles per hour. The defendant informed the jury he was driving at this speed because he was forced to.

The defendant testified the accident was caused by "Willie Harris, his conduct, and a third vehicle caused me to swerve out of course to avoid hitting it and caused this accident." The defendant testified Harris did not indicate why he pulled the gun, but just kept saying, "keep going, don't stop." The defendant did not stop the car because he did

not want to be shot. The defendant testified he had known Harris for sometime, but they were not close friends and both had been in prison before. The defendant admitted he called Harris "Prune," and Harris called the defendant "Tony or B-Bunny." The defendant admitted he had approximately eleven felony convictions, including auto theft, grand larceny, robbery, and possession of controlled substances for sale.

In rebuttal to the defendant's testimony, Ms. Sharon Vanessa Williams, testified that the defendant, known to her as "B-Bunny," came by her home on April 11, 1995 at approximately 11:00 a.m. The defendant was looking for "Prune." It was Ms. Williams's understanding the defendant and Harris were close friends. Willie Harris had spent the night at Ms. Williams's home, and Ms. Williams did not see Harris with a gun while at her home. After the accident, Ms. Williams learned Harris was out on an escape charge.

Based upon this evidence, the jury found the defendant guilty of two counts of vehicular homicide.

## APPELLATE ISSUES

## A. DEFENSE OF DURESS OR NECESSITY

The defendant argues that the evidence at trial raised the defense of duress or necessity, but the State failed to rebut these defenses beyond a reasonable doubt and only proved the defendant's mental state of recklessness by circumstantial evidence. The defendant contends he put on proof that a passenger pulled a gun and forced the defendant to drive in an erratic and unsafe manner, and the State has not refuted or impeached this evidence. The State maintains the defendant failed to request a special instruction on duress or necessity. The briefs of both parties seem to indicate the trial court did not charge either duress or necessity at the conclusion of the trial. However, the trial court did charge the defendant's request for a charge on duress as a defense. Therefore, we must determine if the evidence raised the defense of necessity.

8

Tennessee Code Annotated § 39-11-609 states, except as provided in §§ 39-11-611 - 39-11-621, conduct is justified if:

(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and

(2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

In this case, the defendant did not request an instruction of necessity as a defense. However, it is the duty of the trial court to give a complete charge of the law applicable to the facts of the case. *State v. Harbison,* 704 S.W.2d 314, 319 (Tenn. 1986). The test for whether a special instruction must be given is whether "there is any evidence which reasonable minds could accept as to any such [defense]. . . ." *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn. 1975). If admissible evidence fairly raises either the defense of duress or necessity, the trial court must submit the defense to the jury and the prosecution must "prove beyond a reasonable doubt that the defense does not apply." *State v. Culp,* 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994) (a case involving the offense of escape and the criteria for the defense of necessity).

The Sentencing Commission, in consideration of the Tennessee Sentencing Act of 1989, commented that the defense of necessity excuses criminal liability in those exceeding **rare** situations where criminal activity is an objectively reasonable response to an extreme situation. Necessity has traditionally been used appropriately when the extreme situation is brought on by something other than a human act. Neil P. Cohen, *et al., Prevalence and Use of Criminal Defenses: a Preliminary Study,* 60 Tenn. L. Rev. 957, 966 (1993). The defense of necessity comes about "under the force of extreme circumstances, conduct which would otherwise constitute a crime is justifiable and not criminal; the actor engages in the conduct out of necessity to prevent the greater harm from occurring." Charles E. Torcia, *Wharton's Criminal Law,* § 90 at 614 (15th ed. 1993). This Court has acknowledged that a defense of necessity may be appropriate in certain facts. *State v. Green,* 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995); *Culp,* 900 S.W.2d

9

at 710; *State v. Bobby Ray Jenkins,* Hawkins County No. 03C01-9202-CR-00050, 1992 LEXIS 742 (Tenn. Crim. App., Knoxville, September 18, 1992) ( the defendant, intoxicated, was found with his foot on the brake of a car in the middle of the street; defendant claimed a friend went for help and the defendant put his foot on the brake to keep the car from rolling down a hill, and the engine was running to support the power brake system). However, this court has rejected claims of error in a trial court's refusal to charge the defense of necessity in crimes of violence. *State v. Albert Christian Padgett,* Hamilton County No. 03C01-9704-CR-00138, 1998 LEXIS 834 (Tenn. Crim. App., Knoxville, August 14, 1998) (defendant and companion kidnapped victim and brutally raped victim; defendant alleged he was in fear his co-defendant would shoot him with shotgun if defendant did not participate in rape); *State v. Scotty Davenport,* Davidson County No. 01C01-9611-CR-00477, 1998 LEXIS 212 (Tenn. Crim. App., Nashville, February 11, 1998) (defendant robbed a store to buy drugs for his addiction; defendant claimed his family was threatened by drug dealers from other bad drug deals; defendant failed to show, in aggravated robbery, that he was in imminent harm and aggravated robbery was only alternative).

In this case and based on the defendant's testimony, the trial court submitted an instruction on duress to the jury. The defendant alleged his longtime friend pulled a gun on him, struck him, and told him to drive faster.[1] Although, the defendant testified he was driving at 65 miles per hour at the time of impact, the overwhelming number of other witnesses estimated the defendant's rate of speed from to 70 to 90 miles per hour through a heavily traveled intersection. The defendant's estimation of his speed is questionable. The State countered the defendant's testimony of his fear of Harris with the testimony of Sharon Vanessa Williams, who indicated the defendant and Harris ("Prune") were longtime friends.

Even if we accept the defendant's testimony as true, the defendant has not established the additional charge of necessity was required. The defendant has not shown

---

[1]Harris was prosecuted for his role in this accident, including his flight and carjacking to escape the scene. On advice of counsel, Harris invoked his Fifth Amendment rights and did not testify at the defendant's trial.

10

that the risk to him of defying his longtime friend clearly outweighs, according to ordinary standards of reasonableness, the obvious danger of driving 70 miles per hour into a crowded intersection in the middle of rush hour traffic. From our review of the evidence in this record, the defendant's testimony as to the cause of his erratic driving supports the charge of duress more than that of necessity. Under the facts in this record, we find a charge of necessity was not warranted. Also, as a sub-issue, the defendant contends that the State failed to establish the defendant's state of mind as to the element of recklessness required in a vehicular homicide, in that the jury could have concluded the Buick was out of control for a number of reasons.

A criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn. 1973). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." In other words, "a web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford,* 470 S.W.2d 610, 612-13 (Tenn. 1971); *State v. Matthews,* 805 S.W.2d 776, 780 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990).

From the evidence in this record, we find ample circumstantial evidence to support the jury's verdict as to the defendant's recklessness in causing these two fatalities. There is no merit to these issues.

## B. TRIAL COURT ABUSED DISCRETION
## IN REFUSING A GUILTY PLEA

As to his last appellate issue, the defendant contends the trial court improperly denied him the right to enter a plea of guilty pursuant to Tenn. R. Crim. P. 11. The State

counters the trial court did not abuse its discretion in rejecting the defendant's attempt to plead guilty during the State's proof in chief.

After the testimony of John Barry O'Neill, Jr., the record indicates the defendant wished to accept an offer of settlement of these charges upon a guilty plea. The State indicated it would offer the defendant two six-year sentences to run consecutively upon pleading guilty. The trial court rejected the guilty pleas. In rejecting the guilty pleas, the trial court stated:

> Well, I have here a Notice of Enhanced Punishment, says this defendant's been convicted of petit larceny, grand larceny, auto larceny, robbery, robbery, robbery, robbery, robbery, robbery, grand larceny, grand larceny, aggravated assault, grand larceny, driving while license revoked and reckless driving, which doesn't enhance his punishment, possession of a weapon, theft over ten thousand dollars, three felony drug cases.
>
> Now, if this were true, that would make him a career criminal, which means the least he could get on one of these would be 15 years at 60 percent. I've heard proof so far in the trial that he drove 90 miles an hour, killed two ladies, with a small child who is apparently still severely traumatized. And if convicted the least sentence he could get is much more than 12 years. And it would shock my conscience to allow this case to be settled on a basis like that. Basically that would be just giving this case away. I just don't think that's proper.
>
> If he's found not guilty, that's fine. But to my mind, 12 years is not even the minimum that he could get on one indictment if he's convicted, if the notice is true. Of course, we haven't had a sentencing hearing.

To find that a trial court has abused its discretion in refusing to accept a plea of guilty, it must appear that no substantial evidence supports the conclusion of the trial court. *Goosby v. State,* 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). Also, the trial court has the ultimate decision to accept or reject a guilty plea within its sound discretion. *Farmer v. State,* 570 S.W.2d 359, 361 (Tenn. Crim. App.), *cert. denied* (Tenn. 1978). The trial court did comply with Tennessee Rules of Criminal Procedure 11(e)(4), Rejection of a Plea Agreement. One valid reason for rejecting a plea agreement is that the proposed sentence is considered too lenient under the circumstances of a particular case. *State v. Hines,* 919 S.W.2d 573, 578 (Tenn. 1995); *State v. Todd,* 654 S.W.2d 379, 382 (Tenn. 1983). Also, the trial court must determine if the plea agreement is helpful in the administration of justice and is in the best interest of the public. *State v. Williams,* 851 S.W.2d 828, 831 (Tenn.

12

Crim. App.), *per. app. denied* (Tenn. 1992) (citing *United States v. Bean*, 564 F.2d 700, 702-04 (5th Cir. 1977)).

In this case, the trial court was clearly concerned with the leniency of the proposed plea agreement especially in a case where the defendant drove an automobile at interstate speeds into a crowded intersection at rush hour, in an effort to evade law enforcement officers.[2]

In conclusion, we find there was substantial evidence to support the trial court's rejection of the defendant's mid-trial plea. There is no merit to this issue. The trial court's

---

[2]The trial court felt that the administration of justice would not be served by the plea agreement. The trial court was concerned with the defendant's behavior and demeanor during the trial by interrupting the proceedings with his own objections, pretending to not understand simple things, and attempting to lay the groundwork for a post-conviction petition by complaining about his retained counsel.

judgment is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
DAVID G. HAYES, JUDGE

14