IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 2, 2019

## STATE OF TENNESSEE v. KEITH LAMONT BROWN a.k.a. "KEE KEE"

**Appeal from the Circuit Court for Tipton County**
**No. 8805     J. Weber McCraw, Judge**

_____

### No. W2018-00731-CCA-R3-CD

_____

The Defendant, Keith Lamont Brown, appeals his conviction for the delivery of 0.5 grams or more of cocaine for which he received a sentence of twenty-five years as a persistent offender. On appeal, the Defendant contends that the evidence is insufficient to support his conviction. Upon reviewing the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Frank Deslauriers, Covington, Tennessee, for the Appellant, Keith Lamont Brown.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Walt Freeland and Jason Poyner, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The Defendant was convicted of the delivery of more than 0.5 grams of cocaine as the result of a controlled buy with a confidential informant for the Twenty-Fifth Judicial District Drug Task Force in Covington, Tennessee, on February 25, 2016. Investigator Randal Robbins testified that Mr. Sean Browder, the confidential informant, contacted him and identified the Defendant as someone from whom he could purchase drugs. Investigator Robbins and Officer Tony Doss met with Mr. Browder prior to the drug transaction. Investigator Robbins patted down Mr. Browder and had Mr. Browder empty

his pockets and turn them inside out. Investigator Robbins placed an audio/video recording device on Mr. Browder's person and gave him $150 in bills with recorded serial numbers to purchase drugs.

Investigator Robbins testified that Mr. Browder engaged in a text message exchange with someone who was listed as "Key" in Mr. Browder's cell phone. Investigator Robbins stated that the Defendant was known as "KiKi," and Officer Doss testified that he was aware that the telephone number to which Mr. Browder sent text messages belonged to the Defendant. Mr. Browder sent the first text message to the Defendant at 2:17 p.m., and the final text message from the Defendant was received at 4:27 p.m. and stated, "My boy is meeting you. He's there." The drug transaction occurred within five minutes of the final text message. Mr. Browder sent screenshots of his text message exchange with the Defendant to Investigator Robbins.

Investigator Robbins stated that the Defendant chose the location of the drug transaction and directed Mr. Browder to multiple locations before the drug transaction occurred. Investigator Robbins explained that drug dealers often conduct "counter surveillance" by instructing a buyer to go to multiple locations while someone who works for the dealer watches to ensure no one is following the buyer. Mr. Browder was walking down Highway 51 during a portion of the text message exchange with the Defendant, and Investigator Robbins and Officer Doss were able to maintain visual surveillance of Mr. Browder. However, the officers were unable to maintain visual surveillance of Mr. Browder once he began walking in a residential area. Investigator Robbins maintained contact with Mr. Browder through text messages and telephone conversations.

At 4:15 p.m., Mr. Browder sent Investigator Robbins a text message, stating that the Defendant wanted to meet at Mr. Browder's home. Mr. Browder told Investigator Robbins that the Defendant refused to meet in a public setting. Investigator Robbins feared that the battery to the audio/visual recording device attached to Mr. Browder was low, so he met with Mr. Browder to replace the recording device. Shortly after Investigator Robbins replaced the recording device, Mr. Browder contacted him and stated that the Defendant was sending someone to complete the transaction. Investigator Robbins testified that to avoid arrest, drug dealers often have others perform the "leg work."

The video recording of the transaction showed a white sport utility vehicle with two people inside drive up beside Mr. Browder, the passenger hand Mr. Browder an item in clear wrapping while Mr. Browder gave the passenger the money, and the vehicle drive away. Shortly after the transaction, Investigator Robbins met with Mr. Browder, who turned over the drugs that he had purchased. Investigator Robbins described the drugs as "a white, chalky-like substance" wrapped in cellophane. A field test of the

substance indicated that the drugs were cocaine based. The drugs were sent to the Tennessee Bureau of Investigation ("TBI") for testing, and the TBI confirmed that the drugs were cocaine based and weighed 0.81 grams. Mr. Browder was paid $100 for his work as a confidential informant.

Investigator Robbins obtained the tag number of the white vehicle involved in the drug transaction and learned that the vehicle was registered to Mrs. Sandra Whittington and her husband. Investigator Robbins showed a photograph of Mrs. Whittington to Mr. Browder, who identified her as the driver of the vehicle. Mr. Sterling Brown was identified as the passenger. The Defendant, Mrs. Whittington, and Mr. Brown were not arrested until after they were indicted in November 2016. Mrs. Whittington and Mr. Brown both gave statements to law enforcement following their arrests.

On cross-examination, Investigator Robbins testified that the arrests did not occur until approximately nine months following the offense because he wanted to continue to use Mr. Browder as an informant. Investigator Robbins stated he also was involved in the investigation of a large drug case in another county at the time. He continued to use Mr. Browder as an informant for two or three weeks following the drug transaction. Mr. Browder had been an informant for Investigator Robbins in the early 1990s and began serving as an informant again around the beginning of 2016. Investigator Robbins acknowledged that the Defendant was not in the video recording of the drug transaction.

Mr. Sean Browder testified that he was incarcerated at the time of trial but that he had not been made any promises in exchange for his testimony. He had been convicted of theft offenses in May and November of 2007. He worked as a confidential informant for Investigator Robbins on February 25, 2016, and was paid $100 for his work. Mr. Browder told Investigator Robbins that he could purchase drugs from the Defendant and met with the investigator at approximately 2:00 p.m. to set up the drug transaction. Mr. Browder testified that the Defendant previously had given his telephone number to Mr. Browder. Mr. Browder had the Defendant's telephone number stored in his cell phone under the name, "Key," and he believed the telephone number belonged only to the Defendant.

Mr. Browder sent a text message to the Defendant, asking to purchase $150 in drugs. Mr. Browder testified that it was known that he used crack cocaine. The Defendant sent a text message, asking for Mr. Browder's location. At 2:25 p.m., Mr. Browder responded that he was leaving Munford and that his boss was driving him home. Mr. Browder testified that he was actually with Investigator Robbins, who dropped him off in a parking lot. Mr. Browder and the Defendant continued to exchange text messages, and the Defendant suggested that they meet at Subway, which was located on

Highway 51 and a few blocks from Mr. Browder's home. Mr. Browder sent a text message, instructing the Defendant to call when he was ready to complete the transaction.

When the Defendant failed to contact him, Mr. Browder sent a text message to him at 3:41 p.m., asking, "[W]hat's up?" Mr. Browder received a text message from the Defendant asking for his location and the identity of those with him. Mr. Browder responded with his location and stated that he was alone. He received a text message from the Defendant, requesting his home address. Mr. Browder provided his home address but attempted to direct the drug deal away from his address because the officers would have had difficulty monitoring the drug deal. The Defendant refused to meet in public. Mr. Browder sent a text message stating that he would meet the Defendant at Mr. Browder's mailbox, and the Defendant responded, "My boy meeting you. He's there." Mr. Browder stated that he had assumed that the Defendant would be present for the drug transaction. As Mr. Browder was walking down the road, a car pulled up, and he purchased drugs from the occupants. Mr. Browder did not recognize the occupants at the time of the transaction. He then gave the drugs to Investigator Robbins.

On cross-examination, Mr. Browder testified that he had a problem with drugs for approximately twenty years and had served as a confidential informant on twenty or thirty occasions. He acknowledged that he sometimes used the money he received as an informant to purchase crack cocaine.

Mr. Browder explained that he communicated with the Defendant through text messages in order to maintain a record of their conversation. Mr. Browder stated that he also spoke to the Defendant briefly over the telephone prior to the drug transaction regarding Mr. Browder's location.

Mrs. Sandra Whittington testified that she pled guilty to delivery of 0.5 grams or more of cocaine as a result of the drug transaction in the instant case. She served four months in jail and was not incarcerated at the time of the Defendant's trial. She denied receiving any special treatment in exchange for her testimony at trial. She said she had been using cocaine for approximately one year prior to the offense and had continued using cocaine for three or four months after the offense. She purchased her drugs from the Defendant, whom she knew as "KiKi."

Mrs. Whittington testified that on the day of the offense, she went to the Defendant's home because Mr. Brown was there and needed her to drive him to work. Mrs. Whittington stated that the Defendant offered her $40 in drugs to drive Mr. Brown to a location to conduct a drug transaction. Mrs. Whittington agreed, and the Defendant told her where to go. She stated that Mr. Brown's job was to hand the drugs to the purchaser. When Mrs. Whittington and Mr. Brown arrived at the location, they met a

man who handed Mr. Brown money in exchange for the drugs. Mrs. Whittington stated that Mr. Brown held onto the money until he could give it to the Defendant. Mrs. Whittington later received the drugs promised to her for conducting the transaction. She was not present when Mr. Brown gave the money to the Defendant, and she did not know what compensation Mr. Brown received for his participation. She said she contacted law enforcement officers following her arrest and provided a written statement.

On cross-examination, Mrs. Whittington testified that Mr. Brown was like a son to her and was living with her in February 2016. She was aware that Mr. Brown was on probation for an unrelated offense at the time of the drug transaction. She stated that she received an eight-year sentence as a result of her guilty plea. She was incarcerated for four months following her arrest and was released on probation on the day that she was sentenced.

Mr. Sterling Brown, who was also known as Mr. Sterling Dixon, testified that he pled guilty to delivery of cocaine as a result of the offense. He was on probation for an unrelated conviction at the time of the offense, and his probation was subsequently revoked. He gave a statement to the police regarding his participation in the offense following his arrest. He stated that he was not made any promises in exchange for his statement but that he was threatened with prison if he refused to provide a statement.

Mr. Brown testified that on the day of the offense, the Defendant, who was his cousin, gave him a quantity of drugs and asked him to deliver them. Mr. Brown stated that he was surprised by the Defendant's request because the Defendant had not made such a request previously. The Defendant informed him of the location of the drug transaction. Mr. Brown stated that Mrs. Whittington drove him to the location where he gave a man the drugs. Mr. Brown had met the man on a prior occasion but did not recall the man's name. He believed that the man gave him $80 for the drugs. He understood that the money was to go to the Defendant, but he did not recall whether he or Mrs. Whittington gave the money to the Defendant.

On cross-examination, Mr. Brown testified that he received a sentence of seven months' incarceration followed by probation. He believed that his agreement to testify at the Defendant's trial was beneficial to him regarding his sentence. Mr. Brown stated that he used the Defendant's cell phone on occasion while at the Defendant's home but did not recall whether he used the Defendant's cell phone on the day of the offense.

The jury convicted the Defendant of the delivery of 0.5 grams or more of cocaine, and the trial court sentenced him to serve twenty-five years as a persistent offender at 45%. The Defendant filed a motion for new trial, which the trial court denied. This appeal followed.

**ANALYSIS**

The Defendant challenges the sufficiency of the evidence, maintaining that the State failed to adequately corroborate the testimony of his accomplices. The State responds that the accomplices' testimony was adequately corroborated and that the evidence is sufficient to sustain the Defendant's conviction. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

It is a criminal offense for a defendant to knowingly deliver a controlled substance. T.C.A. § 39-17-417(a)(2). The offense is a Class B felony "if the amount involved is point five (0.5) grams or more of any substance containing cocaine." T.C.A. § 39-17-417(c)(1). The term "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-402(6). As the trial court instructed the jury, a person is criminally responsible for an offense committed by another if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2).

On appeal, the Defendant does not challenge the sufficiency of the evidence as it relates to the elements of the offenses or to a theory of criminal responsibility. Rather, the Defendant maintains that the State failed to provide sufficient evidence to corroborate the testimony of Mrs. Whittington and Mr. Brown as accomplices.

An accomplice is "'one who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime.'" *State v. Jones*, 450 S.W.3d 866, 888 (Tenn. 2014) (quoting *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013)). "[A] conviction may not be based solely upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (citing *State v. Stout*, 46 S.W.3d 689, 696-97 (Tenn. 2001); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994); *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964)). Our supreme court has described the principle as follows:

> "[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

*Bigbee*, 885 S.W.2d at 803 (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Accomplices, however, cannot corroborate each other. *State v. Boxley*, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001) (citing *State v. Green*, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995)). Whether sufficient corroboration exists is for the jury to determine. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001).

In the present case, Mr. Browder used the telephone number that the Defendant had personally given him to arrange a drug transaction. Mr. Browder said the telephone number was only associated with the Defendant, and Officer Doss was aware that the telephone number belonged to the Defendant. Mr. Browder exchanged text messages with the Defendant and spoke to him over the telephone about the drug transaction. The Defendant informed Mr. Browder through a text message that someone else would be

delivering the drugs.  The Defendant argues that Mr. Brown, and not the Defendant, sent the text messages to Mr. Browder.  However, the evidence seen in the light most favorable to the State established that the Defendant gave the telephone number to Mr. Browder as his own number and spoke to Mr. Browder from the telephone number that afternoon.  We conclude that the independent corroborative evidence was sufficient to connect the Defendant with the commission of the offense.  Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Upon reviewing the record and the applicable law, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE