IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 3, 2021 Session

**STATE OF TENNESSEE v. TONY THOMAS and LARONDA TURNER**

**Appeal from the Criminal Court for Shelby County**
**Nos. C1700608, C1700609, and 17-00382     J. Robert Carter, Jr., Judge**

_____

**No. W2019-01202-CCA-R3-CD**
_____

CAMILLE R. MCMULLEN, J., dissenting.

I respectfully disagree with the majority's conclusions that the evidence is sufficient to sustain Defendant Laronda Turner's convictions and that the State did not violate Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the inconsistent statements made by co-defendant Demarco Hawkins. Because the record shows that Hawkins' accomplice testimony implicating Defendant Turner was not sufficiently corroborated, I believe that Defendant Turner's three convictions for first degree premeditated murder should be reversed and that these charges should be dismissed. In addition, because the record demonstrates that the State violated Brady in failing to disclose the inconsistent statements made by Hawkins during several proffer sessions with the prosecution prior to trial, I am of the opinion that the trial court erred in denying a new trial to both Defendant Turner and Defendant Thomas on this basis. Accordingly, I would reverse the judgments of the trial court, dismiss the charges against Defendant Turner, and remand the case for a new trial for Defendant Thomas.

Regarding the insufficiency of the evidence for Defendant Turner's convictions, it is significant that, aside from Hawkins' accomplice testimony, there was no evidence connecting Defendant Turner to the killings of Anthony Isom, Michael Glover, and Chastity Springfield. Hawkins' testimony, which was highly suspect in light of his clear status as an accomplice, had to be corroborated in order to sustain Defendant Turner's and Defendant Thomas's convictions. While there were some pieces of corroborating evidence that implicated Defendant Thomas, the record was devoid of any corroborating evidence implicating Defendant Turner.

We acknowledge that "'[o]nly slight circumstances are required to corroborate an accomplice's testimony.'" State v. Fusco, 404 S.W.3d 504, 524 (Tenn. Crim. App. 2012)

-1-

(quoting State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997)). However, evidence that merely "casts a suspicion" on the defendant, shows that the defendant "had an opportunity to commit the crime in question[,]" or demonstrates that the defendant was "present at the situs of the crime" is insufficient to corroborate an accomplice's testimony. Griffis, 964 S.W.2d at 589; see State v. Adkisson, 899 S.W.2d 626, 644 (Tenn. Crim. App. 1994); State v. Boxley, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001). Instead,

> [t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.

State v. Bough, 152 S.W.3d 453, 464 (Tenn. 2004). In other words, "the [corroborative] evidence must confirm in some manner that (a) a crime has been committed and (b) the accused committed the crime." Adkisson, 899 S.W.2d at 644.

While the proof presented at trial was sufficient to show that the crimes had been committed, the evidence fell far short of confirming that Defendant Turner committed these crimes. Other than Hawkins' accomplice testimony, the only evidence offered by the State in an attempt to connect Defendant Turner to these crimes was the following:

> (1) Detective Dandridge testified that Defendant Turner identified her vehicle from a still-shot of the surveillance recording taken close to the time of the killings;

> (2) Pursuant to the parties' stipulation, a recorded phone call from jail was admitted in which Defendant Thomas asked Deangelo Leachman, a cousin of Defendant Turner, to tell Defendant Turner that she needed to reject the offer of probation from the State because that would be "like a sign of guilt" given that she would have to admit some level of involvement in the crimes and that she needed to "stick to the script" and not be "tricked" into probation. Defendant Thomas and Leachman also discussed the weaknesses of the State's case, including the lack of proof placing the Defendants at the scene and the various statements offered by co-defendant Hawkins;

> (3) Jeremiah Isom testified that Defendants Thomas and Turner arrived at Anthony Isom's home around 7:00 p.m. on the night of the killings in a maroon, four-door Mercury Grand Marquis and that when Jeremiah left

Anthony's home around 9:00 p.m. that night, Defendant Thomas and Defendant Turner were still present. Jeremiah also said that Defendant Turner was always with Defendant Thomas and that he saw both Defendants at Anthony's house three or four times a week because Defendant Turner was Defendant Thomas's driver; and

(4) Elesha Malone testified that he had seen Defendant Turner at Anthony's home once or twice and that Defendant Thomas "was always with" Defendant Turner in a red vehicle. Malone also said that he had seen the Defendants' car parked across the street from Anthony's home the night of the crimes but that he had not seen Defendant Turner at Anthony's home that night.

Initially, it must be recognized that Defendant Thomas's statements that implicated Defendant Turner had to be separately corroborated because accomplices may not corroborate each other. See State v. Green, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995) ("Where there are multiple accomplices there must be additional corroboration, since accomplices cannot corroborate each other."); Boxley, 76 S.W.3d at 386 ("[A]ccomplices cannot corroborate each other."). There was no such independent corroboration of Defendant Thomas's statements in the appellate record. The remaining evidence, which is outlined above, merely casts suspicion on Defendant Turner, indicates that she might have had an opportunity to commit the crimes, and shows only that she was present at the location of the crimes earlier that evening. The proof showing that Defendant Turner's and Defendant Thomas's car was at the scene, that Defendant Turner was at Anthony's home earlier that night, and that Defendant Turner was "always" with Defendant Thomas and was his driver falls woefully short of confirming that Defendant Turner committed these crimes, either through her own acts or through the acts of another for whom she was criminally responsible. See Adkisson, 899 S.W.2d at 644. Similarly, the evidence, outlined by the majority, suggesting that Defendant Turner belonged to a gang is also insufficient to connect her to commission of the crimes charged. In light of the aforementioned precedent and the evidence presented at trial, I must conclude that there is insufficient corroboration of the accomplice testimony implicating Defendant Turner. Consequently, all three of Defendant Turner's convictions should be reversed, and her charges should be dismissed.

As to the issue regarding the inconsistent statements made by Hawkins during the proffer sessions, I am greatly troubled by the trial court's failure, at the motion for new trial hearing, to compel the State to disclose on the record if it knew, prior to trial, that Hawkins would testify that Defendant Turner entered Anthony Isom's home and shot Ms. Springfield. It was clear error for the trial court to block defense counsel from making an appropriate record on whether the State suppressed this information. Additionally, while the majority concludes that the Defendants failed to show that Hawkins' inconsistent statements were material for the purpose of establishing a Brady violation, I believe that

all four of the elements, including materiality, were satisfied, which necessitates the grant of a new trial to both Defendants.  See State v. Jackson, 444 S.W.3d 554, 597 (Tenn. 2014).

"[The] touchstone of materiality is a 'reasonable probability' of a different result," and "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  Kyles v. Whitley, 514 U.S. 419, 434 (1995) (emphasis added); see Jackson, 444 S.W.3d at 595.  "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  Kyles, 514 U.S. at 434 (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)).  As the Tennessee Supreme Court recognized, "Failing to disclose Brady materials may impair the adversary process in various ways, including causing the defense to 'abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued.'"  Jackson, 444 S.W.3d at 595 (quoting Bagley, 473 U.S. at 682).

Although the majority concluded that the suppression of Hawkins' inconsistent statements was not material because this information would not have affected the Defendants' trial strategy or preparation of their cases, I disagree with that conclusion.  In his appellate brief, Defendant Thomas asserted that had the State had disclosed Hawkins' inconsistent statements, (1) he would not have agreed to waive the apparent conflict of interest he had with Defendant Turner; (2) he would not have waived his right to DNA testing of the long hairs found in Michael Glover's hands at the crime scene; (3) he would have investigated the possibility of cooperating with the State; and (4) he would have changed his trial strategy by challenging the State's claim that he either shot Ms. Springfield or was criminally responsible for Defendant Turner's act in shooting her.  In his brief, Defendant Thomas persuasively argued, "Given the tenuous nature of the evidence presented and the paucity of direct evidence implicating [him], the suppression of the evidence of another defendant directly executing the crimes raises the distinct probability of a different result if the prior inconsistent and exculpatory statements of Mr. Hawkins, which Mr. Thomas specifically requested, had been timely disclosed."  In Defendant Turner's appellate brief, she claimed that had the State disclosed Hawkins' inconsistent statements, (1) she would have used an alternate defense strategy that would have resulted in a different outcome regarding her guilt or punishment; and (2) she would have used these inconsistent statements as impeachment evidence to attack Hawkins' credibility at trial.  In her brief, Defendant Turner also asserted, "It is the courts' duty to ensure that defendants have a fair trial even if it means accumulating costs and delaying punishment."

While some of the arguments in favor of materiality are admittedly stronger than others, the Defendants have shown, by a preponderance of the evidence, how the suppression of Hawkins' inconsistent statements made during the proffers "impair[ed] the adversary process" and "undermine[d] confidence in the verdict" by causing them to

abandon lines of independent investigation, defenses, or trial strategies that they otherwise would have pursued. Id.; State v. Rimmer, 623 S.W.3d 235, 280 (Tenn. 2021) (citing State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995)). The record strongly suggests that the State deliberately suppressed Hawkins' inconsistent statements, which were almost entirely at odds with Hawkins' statement to police, in order to ambush both Defendants at trial with evidence that Defendant Turner entered Anthony Isom's home and shot the most sympathetic victim, Ms. Springfield, thus cementing her role in all three crimes. The record also indicates that the State, by suppressing these inconsistent statements and effectively "flipping the script," insulated Hawkins, its star witness, from a meticulously-planned impeachment effort by both Defendants in an otherwise highly circumstantial case. Because the Defendants have established that suppression of Hawkins' inconsistent statements violated Brady, I am of the opinion that Defendant Thomas should be granted a new trial and that Defendant Turner, in the event her charges are not dismissed, should also be granted a new trial.

Because co-defendant Hawkins' accomplice testimony was not sufficiently corroborated and because the State violated Brady by failing to disclose the inconsistent statements made by Hawkins during these proffer sessions, I would reverse the judgments of the trial court, dismiss the charges against Defendant Turner, and remand the case for a new trial for Defendant Thomas.

_____
CAMILLE R. McMULLEN, JUDGE